## BIZZELL VS. BOOKER ET AL.

It is a general rule, that where a party is doing an illegal act, he is liable to other persons injured thereby, regardless of intention to do the injury, or care manifested to avoid it.

Persons encamping and hunting upon the public lands, in a "wilderness" district, are not guilty of such an illegal, mischievous, or wanton act, as would render them liable, at all events, for any injury that may result therefrom to others, regardless of any diligence, care, or prudence, on their part, to prevent such injury.

Where one is doing a lawful act—or an act not mischievous, rash, reckless, or foolish, and naturally liable to result in injury to others—he is not responsible for damages resulting therefrom by accident or casualty, while he is in the exercise of such care and caution as a prudent man would observe, under the circumstances surrounding him, to avoid injury to others: but he is answerable for damages resulting from negligence, or a want of such care and caution on his part.

If parties fire-hunting, or encamped in the woods or prairies, covered with combustible matter, suffer or permit, otherwise than in consequence of *unavoidable accident which*

*could not be prevented by proper care*, the fire to communicate to such combustible matter, they are liable for all property destroyed thereby.

If the parties in such case are not guilty of *negligence*, they are not responsible for the property destroyed: but it is error to instruct the jury that they are not liable if they used *ordinary diligence*.

A party is entitled to have the jury pass upon the facts with a correct understanding of the law applicable to them: and, where this is not done, and the jury might, if correctly instructed as to the law, have rendered a different verdict, this court will award a new trial.

*Writ of Error to the Circuit Court of Sevier County.*

Hon. SHELTON WATSON, Circuit Judge.

PIKE & CUMMINS, for the plaintiff. This case is 'as strong against the defendants as any of those cited below:

1st. Because the parties were doing an *illegal* act in encamping upon and making a camp and raising a fire on government land, (as is presumable,) or, at all events, upon other than their own lands: or, were doing a voluntary, unnecessary act, liable to result in injury to plaintiff or others, which in law would place them in the same position as if the act were illegal; and, at all events, imposed on them the duty of exercising the *utmost* diligence and care — extraordinary diligence to prevent injury. -

2d. Because they chose to use a dangerous element, in a place where it was almost impossible to prevent injury: and this, of itself, imposed the duty of exercising extraordinary care. *Chuley vs. Thompson*, 3 *New Hamp.* 1; *Beckwith vs. Shordike & Hatch*, 4 *Burr.* 2092; *Dixon vs. Bell*, 5 *Maule & Selw.* 198; *Michael vs. Alestree*, 2 *Lev.* 172; *Rush vs. Stieman*, 1 *Bos. & Pul.* 404; *Smith vs. Pelah, Str.* 1264; *Gregory vs. Piper*, 9 *B. & C.* 591; 3 *Kent* 229, 230, 231; *Vandenburg vs. Truax*, 4 *Denio* 464; *Gaadner vs. Heartt*, 3 *Denio* 166; *Underwood vs. Hewson*, 1 *Str.* 596; *Cole vs. Fisher*, 11 *Mass* 137; *Moreton vs. Hardan et al.*, 4 *B. & C.* 223; *Harlow vs. Humiston*, 6 *Cowen* 189; 17 *Cond. Rep.* 288, 402; *Knight vs. Abut*, 6 *Penn. State Rep.* 472;

*Ralph. vs. Ferris*, 7 *Watts & Serg.* 367; *Wakeman vs. Robinson*, 1 *Bing*. 213; *Vincent vs. Stinel...*, 7 *Verm.* 62.

We know of no law forbidding fire-hunting, in any manner, or punishing a man for either the act of hunting, or any act connected with it. The above authorities give the reason. If not punishable, it is *illegal*, by the common law, and upon principles of general morals and policy, for a party to do any act (not impelled thereto by express commands of the law, or duty, or force,) which may result in injury to others. Hunting at all, or camping in the woods for the purpose, falls within the same principle.

The degree of diligence necessary to free a party from liability, even in discharge of legal duties, varies according to the facts of the case. For instance, a person doing business in a cotton gin, or powder magazine, should use extraordinary diligence and prudence, if it were necessary to use fire therein.

Could a person make any excuse at all, where he carried fire into such a place merely for sport and amusement? Could he say he used the care usual with those who were compelled to use fire therein? The court would assuredly hear nothing from such party, but the excuse of some extraordinary and unavoidable force, or unusual accident over which he had no control—as some force by which the fire was driven into the combustible matter.

From these cases, we insist it is clear that the second instruction asked on the part of plaintiff below, ought to have been given. Indeed, it was not so strong for the plaintiff as the law would have warranted. We doubt whether, as the parties were in the woods unnecessarily with a camp-fire, if the wind or a storm had driven the fire an unusual distance, and the destruction of property was the result, the parties could have set that up as an excuse. But the instruction did not go that length. It gave defendants the full benefit of all unavoidable accidents.

The third instructions of defendants differ, very immaterially, from each other. They all amount to this: that if defendants used *ordinary diligence* to prevent injury, defendants were excused. This is in direct conflict with plaintiff's second instruction. But

if there were no conflict, the instructions given for defendants were not the law of the case.

CURRAN & GALLAGHER, for the defendants. In the first place, the instruction asked for by the plaintiff, and refused by the court, was, in itself, contradictory, and calculated to mislead the jury. It first sets out with the assertion that defendants were liable, unless the destruction of the cotton was by "unavoidable accident," and then continues, "which could not be prevented by *proper care.*" Now, unavoidable accident is one that cannot be guarded against by the utmost or most extrordinary diligence or care; whereas, proper care would of course be such care as a prudent man would use in preserving his own property, and by which his property could be saved from destruction; and proper care in itself only means ordinary diligence, as fully defined by STORY in his *Treatise on Bailments, sec.* 11, *et seq.;* and the court thereupon had a right to refuse the same, for, inasmuch as the said instruction was, to say the least, bad in part and contradictory, even admitting that it was good in part, yet it was no error in the court refusing to give the same. *Vide Stanton vs. The State,* 13 *Ark. Rep.* 317. In fine, the whole case turns upon the point, whether the defendants, by being engaged in hunting, were doing an unlawful act, (i.e., were trespassers upon the public lands of the United States, as alleged by plaintiffs,) and whether, under the facts of the case, defendants were bound to use more than ordinary diligence. In the first place, there is no evidence that the land upon which defendants encamped belonged to the United States, or was not the property of the defendants, at all events, it was unenclosed *wild* land; and, therefore, no matter if the same had have been the property of the plaintiff, (which was not the case,) the defendants would not have been trespassers by merely camping on the same, as the case of *Knight vs. Abert,* 6 *Pen. State Rep.* 472, referred to in plaintiff's brief, sufficiently proves.

But admitting, for the sake of *argument,* that the lands upon which the defendants encamped, were public lands of the United

States, and that defendants were engaged in hunting, was it an unlawful act on their part? Clearly not. And all that was required on their part, was to prevent any injury to others by their want of diligence or care.

But what degree of diligence or care should be taken by them to prevent the fire they have made from spreading and injuring other persons' property? We maintain that they were only bound to use ordinary diligence or care, such as a prudent person would use to protect his own property. At this point, the questions naturally arise, what constitutes *ordinary diligence*, and by what rules are we to be governed in coming to the conclusion whether it has been used or not? "Common or ordinary diligence, is that degree of diligence which men in general exert in respect to their own concerns. It may be said to be the common prudence which men of business and heads of families usually exhibit in affairs which are interesting to them. And, in every community, it must be judged of by the actual state of society, the habits of business, the general usages of life, and the dangers as well as the institutions peculiar to the age." *Story on Bailments*, *page* 15, *sec.* 11. "So that it may happen that the same acts which, in one country, or in one age, may be deemed negligent acts, may, at another time, or in another country, be justly deemed an exercise of ordinary diligence." *Ib.*, *p.* 16, *sec.* 13.

This is the true rule by which we are to be guided, and by applying this rule to the cases cited by the opposite party, the position we assume will, we think, appear clear, and perfectly tenable.

In conclusion, we think that unless the position assumed by the opposing counsel is a true and tenable one, to wit: That the defendants were doing an illegal act by camp - hunting, there is not a shadow of a reason why the second instruction prayed for by them and refused, should have been given, and we submit that we have fully shown the fallacy of said position. That a person may be liable for an act committed in one locality or place, when he would not be liable for the same act when committed

by him in another place, we have shown to be the law. Thus, the throwing of a lighted squib in the midst of a crowd of persons, the firing off a gun near a public highway, the sending of ungovernable horses to be broken in a public place, where people are constantly passing to and fro on business, and other cases cited by plaintiffs, were all cases that showed in the person who caused the damage to be done, such a disregard of the life, safety, or personal security of others as made him, in the eyes of the law, a wilful tort - feasor, or as guilty of such gross negligence as to be almost equivalent thereto, and from the locality and publicity of the place, the person must have known at the time, that there was every probability that some accident would happen through his agency, which knowledge would be calculated to make any prudent man refrain from doing the same; but, in the present case, the defendants were encamped a long distance from the cotton, a creek of running water was between them, and there was nothing in the fact of their encamping and building a fire where they did, to denote that there was any probability that the fire would spread and consume the cotton," or to excite such a suspicion in the breast of a prudent man. We think the said second instruction of plaintiffs was properly refused; and, if so, the instructions prayed on the part of the defendants, were properly given.

FOWLER, also, for defendants. The refusal of the plaintiff's instruction complained of, was no error, but a proper exercise of duty. As a whole, it is utterly unintelligible; and perhaps no two of the jury would have put the same construction upon it. For this reason alone, it was properly refused. It was, therefore, well calculated not only to mislead, but to confuse the jury: and it is never error to refuse such instructions. See *Andrews vs. Pond*, 13 *Pet. Rep.* 80; *Doe ex. vs. Ring's heirs*, 3 *How.* (*Miss.*) *Rep.* 143; *Samuel vs. Cravens*, 10 *Ark. Rep.* 396.

The defendants' instructions moved and given, are strictly consistent with both law and reason: but even were it true that the

21B

action of the court, in refusing plaintiff's instructions, and giving those of the appellees, might be subject to verbal or technical criticism, yet, as the jury could not properly have given any other verdict, and as the verdict and judgment are clearly right, upon the whole record, they should not be disturbed. See *Newman vs. Lawless,* 6 *Misso. Rep.* 302; *Finney vs. Allen,* 7 *ib.* 419; *Vauly vs. Campbell,* 8 *ib.* 227; *Sanders vs. Johnson,* 1 *Bibb. Rep.* 322; *Joice vs. Handley,* 3 *ib.* 226; *Elliott vs. Fowler,* 1 *Litt. Rep.* 202; *Clark vs. Boyd,* 6 *Mon. Rep.* 295; *Morton vs. Lawson,* 1 *Ben Monroe Rep.* 46; *The State vs. Lawson,* 14 *Ark. Rep.* 122; *Gibbons vs. Dillingham,* 10 *Ark. Rep.* 17.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was an action of trespass on the case, brought by William H. Bizzell, in the Sevier Circuit Court, against Paul R. Booker, John W. Jones, James H. Walker, jr., and James F. Johnson.

There are eleven counts in the declaration, charging substantially, with variations of form, that on the 9th of November, 1851, the plaintiff was the owner of thirteen bales of cotton, which were deposited under a shed, at Shaw's Landing, on Red River, in Sevier county, waiting for a rise in the river, so that they could be shipped to New Orleans for sale. That the defendants knowing that the cotton was thus stored, on the 5th of November, camped in the woods adjacent to the shed, for the purpose of hunting, and by improper, careless, and negligent management of their camp-fire, fire-pans, and fire-arms, set the woods on fire, which burned up to the shed, fired and consumed the plaintiff's cotton, which was of the value of $40 per bale.

The cause was submitted to a jury upon the general issue, and verdict for defendants. No motion for a new trial was made, but the plaintiff brought up the case on exceptions to the charge given by the court to the jury.

It appears from the bill of exceptions, that the plaintiff asked the court for the following instructions to the jury:

1st. That parties, who purposely or negligently set fire to the

woods, prairies, or open lands, whether the soil be public or private property, are responsible for the natural consequences produced by such fire, and the destruction of all property caused thereby.

2d. That if parties fire - hunting, or encamped in the woods or prairies, covered with combustible matter, suffer or permit, otherwise than in consequence of unavoidable accident, which could not be prevented by proper care, the fire to communicate to such combustible matter, they are liable for all property destroyed thereby.

3d. That the jury might find any one or more of the defendants guilty, and assess entire damages, and others not guilty.

Two other instructions were asked by the plaintiff, about which there is no controversy here.

The court gave all the instructions moved by the plaintiff, except the second.

At the instance of the defendants, the court instructed the jury as follows:

1st. "That unless the jury believe, from the evidence, that defendants were guilty of negligence, even though the cotton was burned by the fire that started from their camp, they are bound by law to find for the defendants.

2d. That it was not unlawful for defendants to be engaged in hunting, and that if the jury believe they used ordinary diligence to prevent injury to others, and were not guilty of negligence, they must find a verdict for defendants.

3d. The plaintiff must prove, in order to maintain his action, that the burning of the cotton was caused by the negligence and improper conduct of the defendants."

The plaintiff excepted to the refusal of the court to give the second instruction asked by him, and to the giving of each and all of those moved by the defendants.

The evidence introduced upon the trial, is set out in the bill of exceptions, but it need not be noticed, further than is necessary to determine whether the instructions in question, if found to be

law, were applicable.   There being no motion for a new trial, the correctness of the verdict is not impeached.   The plaintiff complains only of the action of the court in settling the law of the case for the jury.

The plaintiff introduced evidence conducing to prove his title to the cotton, and its value.   That Shaw's Landing, where the cotton was deposited under a shed, was a public landing, and the usual place of shipment for the neighborhood.   The shed was among the forest trees, without enclosure or clearing about it. The ground was covered with dry leaves, grass, &c., extending up to the cotton, and the cotton was subject to be burned if the woods were fired.   The plaintiff resided some 8 or 10 miles from the landing.   The woods were unusually dry during the fall of 1851, and subject to be burned.   The defendants camped about a half mile from the shed in the woods.   There was a road and a small creek, with a little water in it, between the camp and the shed.   The woods were burned from the camp to the shed, and the cotton consumed.   The wind was blowing for several days, about the time the fire occurred, from the direction of the camp to the shed.   The plaintiff's evidence does not show that the fire started from the camp, but the witnesses seem to have been of that opinion, from the appearance of the burnt woods, and the range of the fire.   The woods were not on fire when the defendants came there to camp, but were burning for several days after they decamped, before the cotton was destroyed.

On the part of the defence, it was proven, that all of the defendants resided in Hempstead county but one, who lived in Sevier county, but remote from Shaw's Landing.   That they came to the vicinity of Shaw's Landing on a camp-hunt.   The evidence conduces to show that they encamped on Sabbath, and left on the following Tuesday, and that the cotton was burned on the succeeding Sabbath.   That at the time they pitched their camp, they burnt the leaves around it for some thirty or forty feet, and then extinguished the fire to prevent fire from spreading from the camp.   One of the

witnesses, who was present at the time, says they used great precaution. Another says they burnt the leaves off for three or four steps around the camp, and then extinguished the fire. That he did not think fire could have spread from the camp to the leaves after this precaution. These witnesses hunted with the party one night—they set out no fire, and were cautious to prevent the communication of fire to the woods.

Some of the witnesses speak of the place, where the defendants were encamped, as a *wilderness* — others, as the *woods*. There was no testimony as to whether the lands were public or private property. Without stating the testimony of each witness in detail, it is sufficient to remark, upon the entire evidence, that none of the instructions asked by either party could be regarded as abstract, or inapplicable, if correct in other respects.

No case has been cited by the counsel, on either side, like the one at bar. There are several reported cases, however, somewhat analogous, in which general principles of law have been announced, which are applicable to the peculiar features of this case, in some degree.

In *Vandenburg vs. Trux*, 4 *Denio* 464, BRONSON, Ch. J., delivering the opinion of the court, said : "It may be laid down as a general rule, that when one does an illegal or mischievous act, which is likely to prove injurious to others, and when he does a legal act, in such a careless and improper manner, that injury to third persons may probably ensue, he is answerable in some form of action, for all the consequences which may directly and naturally result from his conduct; and, in many cases, he is answerable criminally, as well as civilly. It is not necessary that he should intend to do the particular injury which follows: nor, indeed, any injury at all. If a man, without a just cause, aim a blow at his enemy, which, missing him, falls upon his friend, it is a trespass upon his friend, &c. Or, if in attempting to steal or destroy the property of another, he unfortunately wound the owner, or a third person, he must answer for the consequences, although he did not intend that particular mischief. And al-

though no mischief of any kind may be intended, yet, if a man do an act, which is dangerous to the persons or property of others, and which evinces a reckless disregard of consequences, he will be answerable civilly ; and, in many cases, criminally, for the injuries which may follow : as if he discharge a gun, or let loose a ferocious or mad animal in a multitude of people, or throw a stone from a house top into a street where many are passing ; or keep a large quantity of gun powder, near the dwelling of another.    In these, and such like cases, he must answer for any injury which may result from his misconduct, to the persons or property of others."

In the following cases, the general rule as above laid down, is recognized.    *Guille vs. Swan*, 19 *John R.* 381 ; *Vincent vs Stinc-bour*, 7 *Vermont R.* 62; *Vaughan vs. Menlove*, 3 *Bingham N. C.* 468, (32 *Eng. Com. L. R.* 221;) *Phares & Herndon vs. Stewart*, 9 *Porter R.* 336; *Wakeman vs. Robinson*, 1 *Bingham* 213; *Dolph vs. Ferris*, 7 *Watts & Serg.* 367; *Gregory vs. Piper*, 9 *Barn. & Cres.* 593; *Jordan vs. Wyatt*, 14 *Grattan* 151; *Burton vs. McClellan*, 2 *Scam.* 434; *Shrieve vs. Stokes*, 5 *Ben Monroe* 453 ; *Amich vs. O'Hara*, 6 *Blackf.* 258.

Assuming, upon the weight of these authorities, as a general rule, that where a party is doing an illegal act, he is liable to other persons injured thereby, regardless of intention to do the injury, or care manifested to avoid it, it may be first inquired, whether the plaintiff proved in this case that the injury of which he complains, resulted as a consequence of an illegal act on the part of the defendants.

The evidence shows that the defendants encamped in the wood, or *wilderness*, as some of the witnesses term it, for the purpose of hunting wild game, and made a fire at their camp, for the purpose of cooking, and for light at night, it may be supposed.    The testimony does not show whether the plaintiff, the defendants, or other persons, owned the lands upon which the defendants encamped and hunted.    Let it be assumed, however, that the lands were a part of the public domain, as supposed by the counsel of

the plaintiff, and was it an illegal act for the defendants to go into the public forest for the purpose of hunting? Were they trespassers? Not upon any right of the plaintiff's, surely. But was the act illegal? We know of no statute forbidding it. Was it in violation of any rule of the common law, as applicable to the condition and inhabitants of a new country like ours?

In *Broughton vs. Singleton*, 2 *Nott & McCord's R.* 338, Mr. Justice JOHNSON said : "Our ideas of those injuries, for which the action of trespass will lie, are principally derived from the English authorities, and I am disposed to think they are followed, without a proper regard to the vast difference between the situation of the two countries, so that in pursuing the letter, we lose sight of the principle. There, almost every foot of soil is appropriated to some specific purpose ; here, much the greater part consists in unenclosed and uncultivated forest, and a part in exhausted old fields, which have been abandoned, as unfit for further cultivation, in which the cattle of the citizens feed at will. There, it is as practicable as necessary to protect the occupant against those petty trespasses : here, it is wholly impracticable ; and, I think, unnecessary. The attempt to give this protection to unenclosed land, would overwhelm us in a sea of petty litigation—destructive of the interest and peace of the community. Upon this principle, it was determined in the case of *McConico vs. Singleton*, 2 *Con. Rep.* 244, that hunting on unenclosed lands, was not such a trespass as would sustain an action," &c.

In *Knight vs. Abert*, 6 *Penn. Rep.* 472, GIBSON, C. J., said : " In this, and perhaps every other American State, an owner of cattle is not liable to an action for their browsing on his neighbors' unenclosed wood land. But it follows not, that because such browsing is excusable as a trepass, it is matter of right. It is an immunity, not a privilege : or, at most, a license revocable at the will of the tenant, who may turn his neighbor's cattle away from his grounds at pleasure. ` Their entry is, in strictness, a trespass, which, for its insignificance, is not noticed by the law, probably on the foot of the maxim, *de minimis*; or, perhaps, because it is

better that all waste lands should be treated as common without stint. It certainly saves vexatious litigation. The particular loss from it is unappreciable, even as a subject of nominal damages, and would probably be held so, even in England, where waste land is altogether worthless."

In the settlement of a new country, hunting with fire-arms is almost indispensably necessary, for the purpose of destroying wild animals, which prey upon such as are domesticated, and endanger the safety of the settler and his family. Drafts upon the forest game, are also often required to supply the wants of the pioneer, under the contingencies and inconveniences of a sparsely inhabited country. After the country is more densely populated, hunting becomes rather an amusement, than a necessity, but is not, on that account, to be condemned where it does not lead to the neglect of more useful employments.

We cannot hold, therefore, that in encamping and hunting upon the public lands, in a *"wilderness"* district, the defendants were guilty of such an illegal, mischievous, or wanton act, as to render them liable at all events, for any injury that may have resulted therefrom to the plaintiff, regardless of any diligence, care, or prudence on their part, to prevent such injury.

The liability of the defendants to the plaintiff, for the destruction of his cotton, would depend, first, upon the proof whether it resulted from their act; and, secondly, whether it was a consequence of negligence on their part, or a want of that prudence and care which the law required them to observe, while doing an act not strictly illegal.

What constitutes such negligence or want of care and prudence as will render a party liable for an injury resulting to another from an act not unlawful in itself, depends upon the circumstances surrounding the party at the time. Greater care and prudence, of course, are required under some circumstances than under others. The following are cases in which the question of negligence has been discussed and adjudicated, in various aspects:

In *Jordan vs. Wyatt*, 4 *Grattan R.* 151, the facts were, that the plaintiff cut wood upon the land of defendant, with his consent, and, while it was lying thereon, the defendant, with the view of clearing another part of the land, set fire to the rubbish, which spread to, and burned the plaintiff's wood, and he brought trespass against the defendant therefor.   On the trial, the defendant moved the court to instruct the jury as follows:   "If the jury should believe, from the evidence, that the plaintiff's wood was cut off the defendant's land with his consent, and was lying thereon, and the defendant, with a view of clearing another part of the land, set fire to the rubbish on the last mentioned part of his land, and not with the intention of burning the plaintiff's wood, and the fire escaped from him, and passed on to the part of the land where the plaintiff's wood was lying, and consumed it, that this action will not lie, and the jury must find for the defendant."

This instruction, the court refused to give, and the defendant excepted.   The plaintiff obtained judgment, and the defendant appealed to the court of appeals of Virginia.   BALDWIN, J., delivering the opinion of the court, said: "It will be seen, that the proposed instruction did not assert that the fire was kindled with due precaution and circumspection, or that it escaped from the defendant without his default, or that he made the proper efforts to arrest it.   It cannot be doubted, therefore, in the case supposed, that the plaintiff is entitled to redress," &c.

After commenting upon the proper form of the action to be brought in such case, the judge further remarks, that "It is no ground of defence to this action, that the defendant was engaged in a lawful pursuit, and intended no harm, and that his act would have been harmless, but for his carelessness or negligence.   He was not the less a trespasser : and, in truth, his only ground of defence, in this or any proper form of action, would have been that he was, in no wise careless or negligent, but had proceeded with due caution and circumspection, and that the injury done by his act, was occasioned by unavoidable accident.   A man is

bound so to conduct himself, as to avoid doing damage to the person or property of another, and slight default will render him responsible; as where he is uncocking a gun, and it goes off, and accidentally wounds a by-stander; or, if turning around suddenly, he were to knock another down, whom he did not see, without intending it; or, where he accidentally drives a carriage against that of another, though no otherwise blamable than in driving on the wrong side of the road on a dark night; or, in driving a horse too spirited; or, in pulling the wrong rein; or, using imperfect harness. *Wakeman vs. Robinson,* 8 *Eng. Com. L. R.* 300." The judgment was affirmed.

In *Burton vs. McClellan,* 2 *Scammon* 434, the facts seem to have been, that a prairie was on fire, which was approaching the defendant's premises. He, at a time when the statute of Illinois did not authorize him to fire the prairie, set a fire in the prairie around his enclosure, burning a strip of land around it for the purpose of protecting it and his fences from the approaching prairie fire, and the fire thus set by the defendant perhaps spread over the intervening prairie, and extended to and destroyed the plaintiff's stacks of grain, which were surrounded by grass, and exposed to be burnt by such fires.

Mr. Justice SMITH delivering the opinion of the Supreme Court, said:

"First, if an illegal act be done, the party doing, or causing the act to be done, is responsible for all consequences resulting from the act. *Secondly,* If an act be done from evident necessity, and justified by such necessity, but which, without such necessity, would otherwise be illegal, it must appear that such necessity existed at the time, and that every possible diligence and care were taken in the manner of the execution of the act, to avoid injury being done to others, or their property."

It is argued for the plaintiff, that the defendants, in encamping in the woods for the purpose of hunting, were doing an unnecessary and voluntary act, and were therefore liable to the plaintiff for any injury he may have sustained thereby, resulting from

carelesness or *accident;* and in support of this proposition *Vincent vs. Stinsour,* 7 *Vermont Rep.* 66, is cited: where WILLIAMS, Chief Justice, says: "Where a person is doing a *voluntary* act, which he is under no *obligation to do,* he is held answerable for any injury which may happen to another, either by carelesness or *accident.*"

Taking this sentence apart from the context, it is liable to misapprehension and a wrong application, but when considered in connexion with the whole opinion, it is unobjectionable. It is a *voluntary* act, for example, for a man to ride out in a carriage for pleasure, amusement, or exercise — he is under no particular obligation to do so—but it is, nevertheless, lawful, and while he would be answerable for any injury resulting therefrom to another, by any negligence, imprudence, or want of proper care on his part, yet, as Chief Justice WILLIAMS himself held in the above case, he would not be responsible for any injury, occurring unavoidably, or without blame or fault on his part.

The facts in the case of *Guille vs. Swan,* 19 *John. Rep.* 381, were, that the defendant ascended in a balloon, which descended into the plaintiff garden, near where it had gone up, and a crowd of people seeing the defendant hanging out of the car in great peril, rushed into the garden to relieve him, treading down the plaintiff's vegetables and flowers. The balloon also dragged along over his potatoes and radishes, in descending. The plaintiff brought trespass against the defendant, for damages thus occasioned to his garden. SPENCER, Chief Justice, said: "I will not say that ascending in a balloon is an unlawful act, for it is not so; but it is certain that the aeronaut has no control over its motion horizontally; he is at the sport of the winds, and is to descend when and how he can; his reaching the earth, is a matter of hazzard. He did descend upon the premises of the plaintiff. Now, if his descent, under such circumstances, would ordinarily and naturally draw a crowd of people about him, either from curiosity or for the purpose of rescuing him from a perilous situation; all this he ought to have foreseen, and must be responsible for."

Chief Justice BRONSON, in commenting on this case, in *Vandenburg vs. Trux*, says: "For the wrong done by the crowd, as well as for the injury done by himself, the defendant was held answerable as a trespasser. Although the ascent was not illegal, it was a *foolish* act, and the defendant ought to have foreseen that injurious consequences might follow."

In *Vaughan vs. Menlove*, 3 *Bingham's N. C.* 468; 32 *Eng. Com. L. R.* 219, the defendant made a hay rick on, but near the boundary of, his own premises. The hay was in such a state when put together, as to give rise to discussion on the probability of fire, though there were conflicting opinions on the subject; yet, during a period of five weeks, the defendant was repeatedly warned of his peril. His stock was insured; and upon one occasion, being advised to take the rick down to avoid all danger, he said "he would chance it." He made an aperture or chimney through the rick, but in spite, or perhaps in consequence of this precaution, the rick at length burst into flames, from the spontaneous heating of its materials; the flames communicated to the defendant's barn and stables, and thence to the plaintiff's cottages, which were entirely destroyed, and he brought case.

PATTERSON, J., before whom the cause was tried, told the jury that the question for them to consider, was whether the fire had been occasioned by gross negligence, on the part of the defendant: adding that he was bound to proceed with such reasonable caution, as a prudent man would have exercised, under such circumstances.

The verdict being for the plaintiff, a new trial was moved for, on the ground that the jury should have been directed to consider, not whether the defendant had been guilty of gross negligence, with reference to the standard of ordinary prudence—a standard too uncertain to afford any criterion—but whether he had acted *bona fide* to the best of his judgment; if he had, he ought not to be responsible for the misfortune of not possessing the highest order of intelligence.

TINDAL, Chief Justice: "There is a rule of law which says you

must enjoy your own property so as not to injure that of another; and, according to that rule, the defendant is liable for the consequence of his own neglect; and though the defendant did not himself light the fire, yet, mediately, he is as much the cause of it as if he had put a candle to the rick; for it is well known that hay will ferment and take fire if it be not carefully stacked. It has been decided that if an occupier burns weeds so near the boundary of his own land, that damage ensues to the property of his neighbor, he is liable to an action for the amount of injury done, unless the accident were occasioned by a sudden blast which he could not foresee. *Turberville vs. Stamp*, 1 *Salk*. 13. But, put the case of a chemist making experiments with ingredients, singly innocent, but when combined, liable to ignite; if he leaves them together, and injury is thereby occasioned to the property of his neighbor, can any one doubt that an action on the case would lie? It is contended, however, that the learned judge was wrong in leaving this to the jury as a case of gross negligence, and that the question of negligence was so mixed up with reference to what would be the conduct of a man of ordinary prudence, that the jury might have thought the latter the rule by which they were to decide; that such a rule would be too uncertain to act upon, and that the question ought to have been whether the defendant had acted honestly and *bona fide* to the best of his own judgment. That, however, would leave so vague a line as to afford no rule at all; the degree of judgment belonging to each individual being infinitely various; and though it has been urged that the care, which a prudent man would take, is not an intelligible proposition as a rule of law; yet, such has always been the rule adopted in cases of bailment, as laid down in *Coggs vs. Bernard*, 2 *L. Raym*. 909, though in some cases, a greater degree of care is exacted than in others, &c., &c. The care taken by a prudent man, has always been the rule laid down; and as to the supposed difficulty of applying it, a jury has always been able to say, whether taking that rule as their guide, there has been negligence on the occasion in question. Instead, therefore, of saying

that the liability for negligence should be coextensive with the judgment of each individual, which would be as variable as the length of the foot of each individual, we ought rather to adhere to the rule which requires, in all cases, a regard to caution, such as a man of ordinary prudence would observe. That was, in substance, the criterion presented to the jury in this case, and therefore the rule [ *for new trial* ] must be discharged.

PARK, Judge, said: "I entirely concur in what has fallen from his lordship. Although the facts in the case are new *in specie*, they fall within a principle long established, that a man must so use his own property, as not to injure that of others." And after citing the case of *Turberville vs. Stamp*, as applicable, he further remarks: "As to the direction of the learned judge, it was perfectly correct. Under the circumstances of the case, it was proper to leave it to the jury, whether with reference to the caution, which would have been observed by a man of ordinary prudence, the defendant had not been guilty of gross negligence. After he had been warned repeatedly, during five weeks, as to the consequences likely to happen, there is no color for altering the verdict, unless it were to increase the damages."

VAUGHAN, Judge, concurring, said: "It was, if anything, too favorable to the defendant to leave it to the jury, whether he had been guilty of gross negligence, for when the defendant, upon being warned as to the consequences likely to ensue from the condition of the rick, said he "would chance it," it was manifest he adverted to his interest in the insurance office. The conduct of a prudent man has always been the criterion for the jury, in such cases, but it is by no means confined to them," &c.

From the above authorities, it may be safely stated as a general rule, that where one is doing a lawful act, or an act not mischievous, rash, reckless, or foolish, and naturally liable to result in injury to others, he is not responsible for damages resulting therefrom by accident or casualty, while he is in the exercise of such care and caution as a prudent man would observe, under the circumstances surrounding him, to avoid injury to others; but that he

is answerable for damages resulting from negligence, or a want of such care and caution on his part. The degree of care and caution which a prudent man would observe, as above indicated, would naturally vary with the circumstances surrounding him— would be greater in some situations than in others. Such a man, for example, going into a place with fire, or a light, where there are combustible materials, would of course observe great care, and proceed with much more caution than he would find necessary in places where there are no such materials; or driving a carriage, or riding a horse through a public street where people are constantly passing, he would move with greater care than if driving or riding in places not so much frequented by others. Other examples might be put, but these are sufficient to illustrate the principle.

Fire, though a dangerous element, is necessarily used for domestic purposes, and in almost every branch of business. It is made available, as a useful and powerful agent, in all the industrial pursuits of life. Every man has a right to use it, for necessary or convenient purposes, but in the exercise of this right, he is responsible for injuries resulting to others from negligence or fault on his part, and we know of no better standard by which to determine such negligence or fault, than that furnished in the case of *Vaughan vs. Menlove.*

By the general rules, which we have endeavored to deduce from the authorities above cited, the questions presented in the case at bar, may be tested.

The second instruction asked by the plaintiff, and refused by the court, "That if parties fire-hunting, or encamped in the woods or prairies, covered with combustible matter, suffer or permit, otherwise than in consequence of *unavoidable* accident, which could not be prevented by proper care, the fire to communicate to such combustible matter, they are liable for all property destroyed thereby:" in its evident sense and import, we think was substantially correct, and should have been given, though subject to verbal criticism.

The word *"unavoidable,"* taken in its strict sense, though used in several of the cases from which we have quoted above, is a strong expression, but when qualified by the words *"which could not be prevented by proper care,"* and understood as it is ordinarily used, was not so objectionable, as to render the instruction, taken as an entire proposition, objectionable.

The first instruction given for the defendants—"unless the jury believe, from the evidence, that defendants were guilty of *negligence,* even though the cotton were burned by fire that started from the camp, they are bound by law to find for defendants," was right. Where a party is using fire for any lawful prrpose, and is guilty of no *negligence,* he is not responsible for accidents occurring without fault on his part.

The second instruction—"that it was not unlawful for defendants to be engaged in hunting; and if the jury believed they used *ordinary diligence,* even though the cotton were burned by fire that started from the camp, they are bound by law to find for defendants," was improperly given in that form. The words *"ordinary diligence,"* were too general and indefinite, and may have misled the jury. The instruction furnished the jury with no standard by which to determine what was meant by *ordinary diligence.* The diligence to be observed by a party in doing a lawful act, as we have seen, is to be greater or less, according to the circumstances surrounding him, and the nature of the agents which he is using at the time; fire being a dangerous agent, when employed in a place where there is combustible materials, and where it may escape from the party, and do damage to others, without great care, much greater diligence is required of him under such circumstances, than in situations where the danger from the use of fire would not be so great. The court should have told the jury that such diligence or care was required of the defendants, as a prudent man, in such a situation and under the circumstances surrounding them, using fire, would have observed to prevent its getting into the woods and doing damage to others.

The third instruction—"that plaintiff must prove the burning

of the cotton, was caused by the *negligence* and *improper conduct* of the defendants," was, perhaps, right enough. Of course, if they were guilty of no *negligence* or *improper conduct*, they were not responsible for an accident occurring without fault on their part.

But it is argued for the defendants, that even if the court erred in refusing or giving instructions, the judgment should not be reversed, because the plaintiff was not entitled to the verdict upon the evidence; that upon the whole record, there is no error. Conceding that the authorities cited sustain the legal proposition submitted, yet, we think it is not applicable in a case like this. We cannot tell what influence the action of the court had upon the minds of the jury in coming to the conclusion which they did. Possibly, the jury would have come to the same conclusion, had the court charged them correctly, as to the law of the case, but we cannot undertake to say that they might not have rendered a different verdict. The plaintiff was entitled to have them pass upon the facts with a correct understanding of the law applicable to them, and when this is done, their decision is final.

The case made by the plaintiff against the defendants, is by no means a clear one, and but for one feature in it the judgment might be affirmed, under the rule referred to above. The proof does not show that defendants knew that the plaintiff's cotton was deposited in the vicinity of their camp. It appears, however, that they encamped about half a mile from it, in a *wilderness* country, that there was a road running between their camp and the cotton, also a small creek, with some running water in it, but a good deal of drift-wood. The evidence conduces to show proper care on their part in removing the leaves from around the camp, before they kindled their fire, to prevent the communication of it to the woods. Also, as far as the witnesses had any knowledge, that defendants set out no fire, and were cautious to permit none to get into the woods when hunting.

But, perhaps after they left their camp, the woods got on fire— they burned for several days, and finally, reached and destroyed

22B

the cotton. Whether the fire occurred from the camp, was a question for the jury. If it did, perhaps the defendants might have left the camp without extinguishing their fire; and the wind may have blown sparks or coals into the leaves; or it being the fall of the year, and the leaves falling, as the witnesses state, the ground around the camp, from which the defendants had burnt the leaves, might have been re-covered and taken fire. If so, it would be a question for the jury to determine, whether proper diligence on the part of defendants—such as a prudent man would have observed under the circumstances—would not have required them to extinguish the camp-fire before they decamped and returned to their homes.

In passing upon all these facts, it would also be proper for the jury to take into consideration the conduct of the plaintiff in taking care of his property. He resided, it seems, some eight or ten miles from the landing where the cotton was placed. Though it appears from the evidence, that there were some persons residing within a 'mile or two of the landing, there is no proof that the cotton was placed under the care of any one. It was put under a shed, in the forest, surrounded by leaves, &c., and subject to be burned if the woods were fired. The woods were seen on fire for several days before the cotton was burned, but no one it seems was charged with the protection of it. Did the plaintiff take such care of his property as a prudent man would take under such circumstances? Whether he did or not, is a question for the jury, and if he did not, how far that would affect his right to hold the defendants liable for any negligence on their part, resulting in the destruction of the cotton, is a question of law which we are not now called upon to determine. It would be a hardship upon the plaintiff to lose his cotton, and equally hard upon the defendants to have to pay for it, but such hardships are of frequent occurrence.

The remarks which we have thought proper to make in reference to the evidence, have been made in response to the argument that the judgment should be affirmed, regardless of any

error committed by the court, and not to intimate any impression, as to what verdict the jury should have rendered upon the facts. We think, however, that a jury should pass upon the evidence, with a correct understanding of the law, and therefore reverse and remand the cause for a new trial.

---

## VANDEVER VS. CLARK ET AL.

A release of one of several obligors, is a release of all. *Frazier vs. State Bank,* 4 *Ark.* 510; *Ferguson vs. State Bank,* 6 *Eng.* 513.

Where a note sued upon, is described as bearing interest at a certain per cent. *per annum;* and a release pleaded in which the note is copied as bearing the same per cent. *per amount,* but the note is described in the release as bearing the interest *per annum;* there is no such variance as will render the release inoperative.

In copying a note and an assignment endorsed upon it, there is no variance if the copy omit calculations of interest endorsed upon it.

*Writ of Error to Sebastian Circuit Court.*

Hon. FELIX J. BATSON, Circuit Judge.

WALKER and GREEN, for plaintiff. Upon the subject of variance, a distinction is now fully established between allegations of matter of substance, and allegations of matter of description. The former require to be substantially proved—the latter must