## No. 29,441.

Roy Bolin, a Minor, by Austin Bolin, His Next Friend, *Appellee,* v. Harry W. Ballinger, *Appellant.*

(293 Pac. 472.)

Opinion filed December 6, 1930.

*A. E. Crane, B. F. Messick* and *A. Harry Crane,* all of Topeka, for the appellant.

*Hall Smith* and *John W. Lewis,* both of Topeka, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages for injuries suffered by plaintiff through the negligent discharge of a shotgun in the hands of defendant.

The evidence tended to show that when the incident giving rise to this action transpired, the plaintiff, a lad of fourteen years, resided with his parents in Maplehill, and defendant resided about a block northeast of plaintiff's home. We have not been supplied with a free-hand sketch or other illustration of the situation as the rules of practice in this court provide (rule 6, subdiv. 3[e]), but from the evidence it may be inferred that intersecting roads or streets separate the residences of the litigants.

On the forenoon of June 10, 1928, plaintiff stepped off the west porch of his home to get an ax at a woodpile ten or fifteen feet away. About the same time defendant came out of his house carrying a twelve-gauge shotgun. His purpose was to shoot a woodpecker which was picking holes in his house. The bird flew to a peach tree a short distance southwest of the intersecting roads or streets dividing the residential properties. Defendant walked out into the road and aimed at the bird, but also in the general direction of plaintiff (according to the evidence in plaintiff's behalf). Defendant shot the bird, but two of the pellets struck the plaintiff, one on the back of his right hand and another penetrated his left eye, destroying its power of vision and necessitating the removal of the eyeball.

In this action for damages plaintiff charged defendant with negligence in various respects, but particularly in discharging the shotgun without assuring himself that no person was within gunshot range in the same general direction as the bird which it was his purpose to shoot.

Defendant's answer traversed the allegations of plaintiff's petition.

The evidence for plaintiff was substantially as outlined above. In the evidence for defendant, the wounding of the plaintiff by the gunshot fired by defendant was not disputed. Defendant, in part, testified:

"I walked out to the road and shot it [the woodpecker]. I looked to the southwest, but did not see anyone. . . . I looked around and got an open space and fired at the woodpecker. I did not see the Bolin boy any place. If I had I would not have shot. . . .

"I did not know about shooting towards a boy; . . . I heard the boy had a shot in his eye. . . . The doctor and I took him to Topeka."

Some dispute of fact was developed in the testimony on the question whether the tree on which the woodpecker perched was to the right or left of a direct line between the respective positions where plaintiff and defendant were standing when the shot was fired which injured the plaintiff.

The jury returned a verdict for $750 in plaintiff's favor and answered certain special questions, viz.:

"2. What was the distance from where the defendant Ballinger stood to where the plaintiff Roy Bolin stood when the shot was fired? A. 300 to 350 feet.

"3. Standing at the point where Roy Bolin stood when the shot hit him,

was the peach tree from 7 to 8 feet to the left of a straight line between Roy Bolin and the defendant? A. 1 to 8 feet.

"4. Was the shot which hit Roy Bolin's eye deflected by hitting the peach tree? A. No.

"5. How far was the peach tree standing from where the defendant stood when he fired the gun? A. 90 to 100 feet.

"6. At the time the shot was fired, did the defendant know of the whereabouts of the plaintiff, Roy Bolin? A. No."

Judgment was entered accordingly, and defendant appeals. While he presents a formal assignment of error, his brief is mainly an argument that the injury to plaintiff was purely accidental; that defendant was not pointing the gun in the direction of the boy when he fired the shot; that the pellets which hit the boy on the hand and eye must have been deflected from their direct course by the branches of the tree on which the woodpecker was perched; that a twelve-gauge shotgun does not ordinarily throw a charge of shot the distance intervening between defendant and plaintiff, and that it did so in this instance "was not according to the experience of mankind" and that "no one could guard against such an unusual happening."

Doubtless all these points were carefully considered by the jury, as well as the evidence and inferences to the contrary. The argument that the gun was not pointed in the direction of the plaintiff is based upon a seeming conflict of testimony touching the location of the tree with reference to a direct line between the positions of plaintiff and defendant. Plaintiff testified that the tree was to the left of a straight line looking from him to defendant. Defendant testified that from where he stood and looking towards plaintiff's position the tree was to the right of a straight line. This matter might have been kept clear of dispute by avoiding the use of the words "right" and "left" in questioning the witnesses. If both had been asked whether the tree was north or south of a straight line probably there would have been no "darkening of counsel" on this point of fact.

It seems useless to argue that a shotgun will not carry a charge of shot a distance of 300 to 350 feet. It did carry part of the charge that distance in this instance. How far a shotgun will carry depends upon the quality of the gun, its elevation, the strength of the explosive, the weight and size of the pellets, as well as the velocity and direction of the wind, and the care with which the ammunition is fixed in the cartridge. Those features are matters of common

knowledge. Probably experts in the use of firearms could suggest other factors which would affect the distance. One witness for the plaintiff testified that defendant said he was using "extra heavy shot."

Defendant cites cases holding that there is no liability for injuries resulting from the accidental discharge of a weapon neither purposely nor negligently pointed towards the injured party. Such, however, is not this case. Defendant fired the gun without looking to see that there was no person within shooting distance to be injured by his act. We note, of course, that plaintiff said he did look and that he did not see the plaintiff. But it was for the jury to assess the credence to be given to that testimony. Moreover, if the peach tree obscured his vision beyond, it was negligence to shoot on the bare assumption that there was no person within gunshot range to be injured thereby. If the shooting had been done in an uninhabited wilderness, there would have been no liability for an unintentional injury. (*Bizzell v. Booker,* 16 Ark. 308.) If plaintiff and defendant had been fellow hunters and one had unintentionally shot the other, the question of negligence would have been for the jury to solve (*Whitten v. Hartin,* 163 Mass. 39; *Winans v. Randolph,* 169 Pa. St. 606), but where the shooting is done, as in this case, in a thickly settled community, it is negligence as a matter of law to shoot without first making sure that no injury can happen to persons or property by the discharge of firearms. (*Conradt et al. v. Clauve,* 93 Ind. 476; *Dalton v. Favour, Jr.,* 3 N. H. 465; *Judd v. Ballard,* 66 Vt. 868.)

In *Welch v. Durand,* 36 Conn. 182, 185, it was said:

"In this case the defendant was guilty of wanton misconduct and culpable neglect. The latter is expressly found by the court and would justify the judgment, but the former is shown by the facts. . . . Shooting at a mark is lawful, but not necessary, and may be dangerous, and the law requires extraordinary care to prevent injury to others; and if the act is done where there are objects from which the balls may glance and endanger others, the act is wanton, reckless, without due care, and grossly negligent."

In *Harper v. Holcomb,* 146 Wis. 183, where defendant mistook the plaintiff for a deer and shot and injured him, a judgment for damages was affirmed. The headnotes in part read:

"It is a matter of common knowledge that in the deer-hunting season the region in this state visited for that purpose is traversed by so many persons that one is likely to make his appearance at any time during the ordinary hours for hunting; and a hunter is bound, before shooting, to use care com-

mensurate with the danger to determine whether the object shot at is a deer or a man.

"Even if, in this case, defendant had reasonable ground to suppose that the moving object at which he shot was not his guide (as it in fact was), yet he was, as matter of law, guilty of negligence in shooting as he did at such object, partly obscured by undergrowth, without waiting for such a view as would enable him to know that it was not a human being." (¶¶ 4, 5.)

In the case just cited error was assigned on an instruction that under such circumstances defendant was under a duty to exercise the highest degree of care and caution. The court held that the instruction was not prejudicial because defendant was guilty of negligence as a matter of law.

In *Corn v. Sheppard*, 179 Minn. 490, 229 N. W. 869, it was said:

"Firearms are recognized as such dangerous instrumentalities that, where a person has a gun in his hands and it is discharged, even accidentally and unintentionally, he is held liable for the injuries caused thereby, unless he shows that he took all reasonable precautions to guard against accidents, and that the discharge of the weapon did not result from any careless act on his part. . . .

"The rule is stated in 12 Am. & Eng. Enc. (2d ed.) 519, as follows: Where an injury occurs from the discharge of a gun or other firearm, he by whom it was discharged, in order to excuse himself from liability for the injury, must show that the discharge was absolutely without his fault, and that it happened by inevitable accident." (pp. 870, 871.)

See, also, *Benson v. Ross*, 143 Mich. 452; *Hankins v. Watkins*, 28 N. Y. Supp. 867; *Wright v. Clark*, 50 Vt. 130.

Counsel for appellant press on our attention the case of *Cleghorn v. Thompson*, 62 Kan. 727, 64 Pac. 605, where a rifle bullet was deflected from its course and killed a man on a public road 70 or 80 rods away. That case is not in point. In this case we have to consider the jury found that the pellets which injured the plaintiff were not deflected from their course.

Fault is found with this instruction:

"8. . . . If you find . . . that the defendant, Harry W. Ballinger, at the time and place mentioned in the petition, shot at a bird in a tree in line with the plaintiff, Roy Bolin, without looking to see whether anybody was in line and within range of the gun he was shooting, then and under such circumstances, he would be liable to the plaintiff in damages, if any have been proven, if you find it was shot fired from his gun that struck the plaintiff, Roy Bolin, in the eye."

One of defendant's objections to this instruction is that it was not supported by any evidence, that no witness testified that the

defendant, the bird and the plaintiff were "in line." Such an objection is too refined. A charge of bird shot will scatter over a considerable area at a distance of 300 to 350 feet. The jury found that the tree on which the bird sat was only from 1 to 8 feet out of line between defendant and plaintiff. The instruction was within the issues and the evidence, and was a correct and simple statement of pertinent law.

Other objections to the instructions have been duly considered, but the court can discover no merit in them nor anything further in this case to warrant discussion.

The judgment is affirmed.