No. 33,207

GORDON FITTS, JR., a Minor, by GORDON FITTS, his Father and Next Friend, *Appellant,* v. THE BADGER LUMBER AND COAL COMPANY, *Appellee.*

(68 P. 2d 631)

Opinion filed June 12, 1937.

*E. C. Wilcox* and *J. Howard Wilcox,* both of Anthony, for the appellant.

*H. W. Goodwin* and *W. H. Schwinn,* both of Wellington, *Blake A. Williamson* and *James K. Cubbison,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Plaintiff brought this action to recover damages for the loss of his eye, and appeals from a judgment in favor of the defendant.

Plaintiff's petition alleged that defendant maintained a store managed by an agent at Argonia, Kan., and kept, among other merchandise, guns, rifles and firearms, including an air rifle, which were placed on a counter in a rack exposed to public view and from which prospective customers could reach, handle and inspect the same. That on August 1, 1935, plaintiff Gordon Fitts, Jr., entered the store with Jay Moyer, age six years, for the purpose of inspecting and

trying certain toys, tricycles and wagons, and at that time there was in the gun rack an air rifle loaded with BB shot and cocked and so constructed that if discharged it would forcibly eject the shot; that defendant's agent negligently placed the air rifle in the rack knowing it to be loaded and cocked and negligently failed to ascertain whether it was loaded and cocked, and allowed it to be exposed to the public in such condition; that Jay Moyer was attracted to the air rifle and in endeavoring to handle and inspect it dropped it upon the floor, whereby it was discharged and the shot propelled from it struck the plaintiff's eye, completely destroying the eye and the vision thereof, for which he sought damages.

The only part of the answer we need notice is the allegation that if plaintiff sustained injuries the same were caused solely by the unfortunate, careless and negligent acts of Jay Moyer.

At the trial defendant requested that certain special questions be submitted, the request being allowed. After deliberation the jury returned a verdict in favor of the defendant, but did not answer the special questions. The plaintiff then requested that the jury be sent back to answer the special questions, and the defendant asked leave to withdraw the special questions. The trial court denied plaintiff's motion and allowed defendant's motion, and then rendered judgment for defendant on the general verdict. Motion for a new trial was denied and plaintiff appeals to this court, specifying as error that the verdict is not supported by and is contrary to the evidence, and that the trial court erred in instructing the jury and in not requiring the jury to answer the special questions.

We notice that appellant does not specify as error the overruling of his motion for a new trial, nor does he present it in his brief. Many of our early cases hold that errors relating to matters occurring on the trial, for which a new trial was asked, cannot be considered on appeal unless the action of the court in overruling the motion for a new trial is assigned as error. In *Struthers v. Fuller*, 45 Kan. 735, 26 Pac. 471, it was held that unless the overruling of the motion for a new trial is assigned as error, this court cannot consider rulings on the admission of testimony, nor an assignment of error that the verdict is not sustained by the evidence and is contrary to law. The appellee does not urge the omission nor seek to take advantage of it and we shall consider the appeal.

The plaintiff in this case was seven years old when the case was tried, and the only eyewitness, Jay Moyer, was about the same age

Before being permitted to testify, they were examined by the court in the absence of the jury. At that examination it was quite apparent that the recollection of each as to what occurred on August 1, 1935, was quite dim, and had been refreshed through conversations with their parents and others, but after expressing some doubt as to their competency the trial court permitted them to testify. Their testimony in the presence of the jury, with that of other witnesses, tended to show the following: The place where the accident occurred was a hardware store. On the right-hand side of the storeroom were wall cases and shelves set against the wall. Some fifteen feet back from the display windows at the front and recessed in the shelving there was a rack on which guns were placed so that the butts rested solidly on a shelf, the barrels leaning toward the wall and fitting into slots to hold them. This shelf was about forty-eight inches above the floor. Underneath was a lower shelf on which ammunition was kept and below that were drawers or bins. Toward the center line of the room, and sufficiently distant to leave a passageway for clerks was a row of display and wrapping counters. There was an opening or gateway between the counters to permit passage from the front to the rear; although there was dispute as to its location, there was evidence that the nearest opening was twenty-two feet from the gun case. Down the center of the room were tables on which goods were displayed. The plaintiff testified that his parents had promised to get him a little wagon and with Jay Moyer he went into the store to look at wagons and toys; that they asked the manager, Troxel, if they could play with toys and he consented; that he rode a wagon and Jay rode a scooter up and down the aisle; that after playing awhile Jay suggested getting the air rifle and to do so climbed on the bins; that he became overbalanced and dropped the air rifle; that just when Jay was getting the rifle, Gordon was in the wagon near the gateway in the line of counters; that Jay called to him as the rifle started to fall and he got from his wagon, through the gateway and behind the counter, when the rifle hit the floor and was discharged, the shot hitting him in the eye. Jay Moyer's version of what happened was similar. He stated that after playing with wagons and tricycles he went to look at the guns; that he climbed up and took hold of the gun (air rifle) to pull it down to look at it and it dropped; that he called Junior (plaintiff) to come catch it, but it dropped before he got there and it shot him in the eye. The father of plaintiff had previously testified

he examined the air rifle and it worked hard. On direct examination Jay Moyer said he did not know how to cock the gun, and that he did not cock it and did not pull the trigger; that the day before Troxel had shown the rifle to him and another boy and that he had tried to cock it and couldn't, but in later direct and on cross-examination he explained how the rifle was loaded and cocked, and that on the previous day he had loaded, cocked and shot it. Troxel testified he could recall no such incident about Jay Moyer's having been in the store; that on August 1, 1935, he was working at his desk and the boys came into the store; there was no conversation about their playing with toys; that the boys took a scooter and a wagon and argued about who would ride the scooter and who the wagon. Soon after he heard Junior say, "Jay, you have shot me." Junior was then between display tables in the center of the room. He stated that the air rifle makes noise enough to be heard when discharged, but he did not hear it and did not know how long it was after the gun went off until he heard Junior scream. He stated he did not know whether the gun was loaded or not and had not inspected it the day of the accident until after the accident, when he shot it once and it was loaded and there was no more shot in it. He also testified that prior to the accident he had shown the rifle to prospective customers and had shot it, and that on the day of the accident he had not seen the gun out of the rack. There was also testimony that customers were and were not permitted back of the counter. It thus appears that, assuming the testimony of the little boys was entitled to full credence, the jury might well have returned a verdict for plaintiff, but it is just as apparent that the little boys did not have a clear recollection of what took place; that the testimony warranted a conclusion that plaintiff was struck when he was standing in the center of the room and in a place where a shot from the rifle dropped on the floor between the counter and the wall cases would not have hit him; that for Jay Moyer to get the rifle it was necessary for him to go behind the counter, where he was not permitted to be, and then to climb up on shelves or bins in order to reach it, and the variations in the little boy's testimony that he didn't know how to load, cock and shoot the rifle, but that he had loaded, cocked and shot it, left room for the jury to believe that possibly that was what he did at the time of the accident. The jury, which had an opportunity to see and hear the little boys, and the other witnesses, found for the defendant, and the trial court, which not

only saw and heard what the jury did, but had the added advantage of its own preliminary examination, approved the verdict, and later denied the motion for a new trial. Our own examination of the record brings us to the conclusion that we cannot say the judgment is unsupported by or contrary to the evidence.

In connection with the specification of error respecting instructions to the jury, we note that the record shows no objection to the instructions that were given, but that six requested instructions were not given, at least in the form requested. The contention of appellant is based principally on the failure to instruct as requested. No particular purpose would be served in setting out the six requested instructions by which appellant sought to have the court instruct the jury that it is negligence per se for a merchant to display a loaded and cocked air rifle in an open display case when the case is open to the view of patrons and the rifle can be reached and handled, that a loaded and cocked air rifle so placed is a dangerous instrumentality, and that it should have been so determined as a matter of law by the court, and the jury so instructed. In support of his contention the jury should have been so instructed, appellant relies largely upon *Gerbino v. Greenhut-Siegel-Cooper Co.*, 152 N. Y. S. 502, 165 App. Div. 763. In that case defendants conducted a department store in New York City and on December 7, 1914, gave an entertainment in their store for children which the plaintiff, then fourteen years old, with other children, attended. The store maintained a sporting-goods department in which there was a table upon which there was a rack containing air rifles and there were also such rifles lying on the table. Plaintiff wanted to purchase an air rifle, and the party was directed to the sporting-goods department, at which time no employee was at the table, but a few feet away one employee was waiting on a customer and another was polishing some revolvers. A store detective was some sixty feet away and saw the boys handling the air rifles for some minutes before the accident, but did not interfere with their doing so although it was his duty to stop them. The rifles were so placed they could be reached from either side or end of the table. After handling the rifles, plaintiff moved off a short distance. One of his companions picked up an air rifle, cocked it and tried it, with no result. He then picked up another, cocked it, and without taking aim, pulled the trigger and shot plaintiff in the eye. The testimony showed the rifle was one with a 1,000-shot magazine, and that each rifle was

inspected every morning before being exposed for sale, but it was developed that the persons making the examination did not know that shot would not feed from the magazine into the barrel if the rifle were cocked while being pointed downward. Defendant appealed from a judgment for plaintiff. On appeal, it was held that defendant, if negligent in the duty it owed plaintiff, was not relieved from liability because of the intervening act of the boy in shooting the rifle, and that the jury was justified in finding defendant guilty of negligence in exposing the loaded gun because defendant was required to exercise a high degree of care to see the rifle was not loaded when exposed for sale, or thereafter, either by its employees or by those visiting the store. It was also held the jury was justified in finding the defendant should have anticipated that boys would examine the rifles and might load them to see how they worked. The charge to the jury is not shown, but it is apparent it was not charged that exposing the rifle was negligence per se, but that the question of negligence was left to the jury. We have detailed the above case rather fully to show that there the loaded rifle was left where it could readily be reached and handled, whereas in the case before us, it could only be reached by one who went to a place in the store where he had no right to be, and, so far as Jay Moyer or plaintiff was concerned, at a place where he had to climb up to reach it. Although there was dispute as to where the gateway in the counters was, there was no dispute that for Jay Moyer to get the air rifle he had to go behind the counter and then climb up on a bin or drawer to reach for it. We have examined other cases cited by appellant, but shall not discuss them. Under the circumstances here, the trial court properly left the question of defendant's negligence to the jury, and did not err in not instructing the jury that defendant was guilty of negligence per se.

In support of his contention that an air rifle loaded and cocked and placed in a rack in a store for exposure for sale is a dangerous instrumentality and that the trial court should have so instructed the jury, appellant cites *Archibald v. Jewell,* 70 Pa. Superior Ct. 247, and *Loop v. Litchfield,* 42 N. Y. 351, 1 Am. Rep. 513. An examination of those cases shows they hardly support the contention.

While this court has recognized that firearms may be a dangerous instrumentality (*Bolin v. Ballinger,* 131 Kan. 685, 293 Pac. 472), it must be borne in mind that an air rifle lacks much of the dangerous

character of what is usually known as a firearm. After instructing that the negligence complained of was the exposure for sale and within reach of customers of the air rifle in a loaded and cocked condition, in other instructions defining defendant's duty, the trial court said, in part, "You are further instructed that one dealing with a dangerous agency" and "the owner of a thing which is capable in its nature of doing injury." Appellant concedes that the instructions from which these quotations are made state abstract principles of law in a fair manner, but he contends they do not go far enough— that the court should have said specifically, as a matter of law, that the air rifle was a dangerous instrumentality. We believe the instructions given were as favorable to plaintiff as the evidence warranted. And in any event, we do not believe the jury was misled in any particular with regard to the character of the air rifle, for the instructions made it clear that if the air rifle was placed in the rack in condition as claimed by plaintiff, it was a dangerous agency.

Appellant likewise requested an instruction with reference to the proximate cause. Waiving any criticism of the requested instruction, the record discloses the trial court gave a full instruction on proximate cause which appellant criticizes only as being abstract. Perhaps so, but it was correct, and when read in connection with the other instructions, the jury was fully advised as to what negligence rendered defendant liable.

Although appellant assigned as error the refusal of the trial court to send the jury back to answer the special questions submitted at request of the defendant, he does not argue it in his brief, and it might well be considered abandoned. In *Railway Co. v. Moffatt,* 60 Kan. 113, 55 Pac. 837, it was held not to be error to permit withdrawal by the party requesting submission, where the questions were not framed with reference to those asked by the other party, and where there is no showing of prejudice. There is no attempt to make such a showing here.

The tender age of plaintiff and of the only eyewitness, and the character of the injury to plaintiff, have caused us to give unusually careful attention to this appeal. The record discloses that the trial court was very lenient in its rulings on admission of evidence and correct in its instructions to the jury.

No error has been made to appear and the judgment of the trial court is affirmed.