**Guy Hamilton JONES, Sr., Plaintiff,**

v.

**UNITED STATES of America and W. H. Dillahunty et al., Defendants.**

**No. LR–75–C–141.**

United States District Court, E. D. Arkansas, W. D.

Aug. 27, 1975.

Guy Hamilton Jones, Jr., and Phil Stratton, Conway, Ark., for plaintiff.

Robert Fussell, Asst. U. S., Atty., for defendants.

## MEMORANDUM

URBOM, Chief Judge.*

This is an action against a United States Attorney and his assistants, agents of the Department of Justice, and agents of the Internal Revenue Service of the Department of the Treasury for damages for alleged jury tampering occurring at the plaintiff's aborted criminal trial. The claim is that during the criminal trial the defendants (who were prosecutors and others associating with the prosecutors in prosecuting the plaintiff) contacted or caused the contacting of a juror at and about his home, as a result of which a mistrial was declared, thereby depriving the plaintiff of the just and speedy trial guaranteed by the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States.

* District of Nebraska, sitting by designation.

Pursuant to this court's order of July 9, 1975, a hearing was held on July 17, 1975, to consider the defendants' motion to dismiss, filing at 34, and motion to dismiss or in the alternative for summary judgment, filing at 114. The hearing consisted of testimony and oral argument relative to the legal recognition of this action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and the Civil Rights Act, 42 U.S.C. § 1981 et seq. This court previously held that no claim under 42 U.S.C. § 1983 has been stated by the plaintiff in his complaint as amended, and the plaintiff has admitted that no claim exists under 42 U.S.C. §§ 1981, 1982, 1984, 1985(1), 1985(3), and the last clause of 1985(2). Therefore, if a legal remedy exists to redress the allegations made by the plaintiff, it exists under the Federal Tort Claims Act or the initial clause of 42 U.S.C. § 1985 (2).

## I. THE FEDERAL TORT CLAIMS ACT

The Federal Tort Claims Act, 28 U.S. C. § 1346(b) declares:

". . . [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*" (Emphasis added)

It is the italicized language which this court now addresses to determine whether a recognizable claim has been presented. The court must decide whether under the facts alleged the United States, if it were a private person, would be liable to the plaintiff under Arkansas law.

In his complaint the plaintiff alleges that the defendants participated "in contacting, associating with, and using electronical devices within and about the home of a juror impaneled . . . in the criminal trial of the plaintiff" and that "the Court, upon being informed of said relationship, acts, contacts and communications . . . promptly declared a mistrial, preventing plaintiff from obtaining a prompt determination of the matters at issue." The second count of the complaint alleges that the defendants "secretly conspired to and did tamper with a juror sitting on the trial of the Plaintiff" and "did secretly, jointly and severally conspire to, and did obstruct justice in said trial by preventing a determination of said trial as provided by law thereby depriving the Plaintiff of a speedy trial with an impartial jury." Using the allegations of this complaint the court must decide whether the law of Arkansas recognizes a cause of action for damages for alleged jury tampering and obstruction of justice.

The plaintiff argues that jury tampering is a criminal violation of both state and federal law (citing Ark.Stat. § 41–2806 (1964 Repl.); 18 U.S.C. § 1503). He then argues that the common law of Arkansas recognizes an action for damages resulting from any illegal act. The plaintiff cites *Bizzell v. Booker,* 16 Ark. 308 (1855) to support his contention that all damages resulting from illegal acts are actionable under the Arkansas common law. The *Bizzell* case was an action of "trespass on the case" wherein the plaintiff sought to recover fire damage to his goods allegedly caused by the defendants' "improper, careless, and negligent management of their camp-fire, fire-pans, and fire-arms." The case specifically dealt with the appropriateness of certain jury instructions and in considering those instructions the court cited *Vandenburgh v. Truax,* 4 Denio 464, for the general rule that:

". . . when one does an illegal or mischievous act, which is likely to prove injurious to others, and when

he does a legal act, in such a careless and improper manner, that injury to third persons may probably ensue, he is answerable in some form of action, for all the consequences which may directly and naturally result from his conduct; and, in many cases, he is answerable criminally, as well as civilly." 16 Ark. at 317.

Since the *Bizzell* court held that no illegal act had been performed by the defendants under the alleged facts and that no instruction was proper about liability for illegal acts, even assuming that such was the law in Arkansas, I do not believe it can be cited for the broad proposition that any criminal act subjects the wrongdoer to civil liability. It is unquestionable that assault and battery can subject an individual to both criminal and civil liability. Likewise, the destruction of property can result in criminal and civil penalties. But it is highly improbable that all forms of illegal activity, regulatory and criminal, can become a basis for civil liability, and the better course is to examine the applicable criminal statute to determine whether civil liability is encompassed therein.

In determining whether a private remedy is to be inferred from the enacting of a federal or state criminal statute, this court considers the factors delineated by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? See, e. g. *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 460 [94 S.Ct. 690, 693, 694, 38 L.Ed.2d 646] (1974) (*Amtrak*). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? "

The *Cort* case dealt with a federal statute and the suit before this court concerns an alleged violation of both state and federal criminal law. Although in the context of the Federal Tort Claims Act the question is whether Arkansas courts would recognize a civil remedy from violation of a state or federal criminal statute, the criteria of the *Cort* decision are analytically helpful. In applying these standards, however, I am mindful that no common law action for damages for tortious jury tampering has been found by either this court or the counsel representing the parties in this action. This absence places the plaintiff initially in a tenuous position.

In addressing myself to these criteria I look first to *Smith v. United States*, 274 F. 351 (C.A. 8th Cir. 1921), wherein it was stated that the purpose of § 135 of the Criminal Code (U.S.Comp. Stat. § 10305—the predecessor of 18 U.S. C. § 1503) "was not to charge witnesses with duty or liability, but to protect them and the administration of justice from corruptly threatening and intimidating acts by third persons." If the statute were directed to a class of people it would be a class comprising witnesses and jurors, a class to which the plaintiff in this action does not belong.

Secondly, this court has been unable to discern any indication of state or congressional intent to create a civil remedy through the passage of their respective criminal statutes against jury tampering. An argument against such an inference of intended civil redress is presented in *Robinson v. Missouri Pacific Transp. Co.*, 85 F.Supp. 235 (U.S.D.C. W.D.Ark.1949), and *Ragsdale v. Watson*, 201 F.Supp. 495 (U.S.D.C.W.D.Ark.

1962), wherein it was held that there is no civil action for damages arising from subornation of false testimony. The criminal statutes on perjury and jury tampering are sufficiently analogous for this court to say that as of this date no civil action for jury tampering exists in the State of Arkansas. If any legislative intent existed to provide such a remedy, it has not been found by counsel or me.

Thirdly, I do not believe that it is consistent with the underlying purpose of the jury tampering statutes to imply a civil remedy for their violation. The emotional or physical distress the plaintiff may have incurred as a result of his mistrial cannot arguably have been the subject to which the criminal statutes were directed. Additionally, any violation of his speedy trial rights could and may have been protected within the framework of a constitutional defense at his criminal trial. I do not think, therefore, that the drafters of these criminal statutes intended to create a civil remedy for their violation. Furthermore, I am convinced that the criminal strictures set out in the statutes themselves are sufficient to ensure the protection of trial witnesses, jurors, and the fair administration of justice in our judicial system.

■ I conclude that no claim has been stated upon which relief can be granted under 28 U.S.C. § 1346(b), and that portion of the complaint based on the Federal Tort Claims Act should be dismissed. See *Devlin Lumber and Supply Corporation v. United States*, 488 F.2d 88 (C.A. 4th Cir. 1973); *Jeffries v. United States*, 477 F.2d 52 (C.A. 9th Cir. 1973); and *Roberson v. United States*, 382 F.2d 714 (C.A. 9th Cir. 1967).

## II.  42 U.S.C. § 1985(2)

■ The plaintiff argues further that a claim upon which relief can be granted has been stated under 42 U.S.C. § 1985 (2). Specifically, the plaintiff directs this court's attention to *Kelly v. Foreman*, 384 F.Supp. 1352, 1355 (U.S.D.C. S.D.Tex.1974), wherein it is stated:

"It is logical to assume that Congress intended by the language of § 1985(2) before the semicolon to protect specific activities vital to the functioning of courts of the United States, without requiring any allegation or proof of invidious discrimination."

The defendants disagree, arguing that an allegation of racial or other class-based discrimination is a necessary element for asserting jurisdiction under § 1985(2). Cited by the defendants is *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). There the court said:

"It is thus evident that all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies. That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, 'that Congress has a right to punish an assault and battery when committed by two or more persons within a State.' Id. at 485. The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . . The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." 403 U.S. at 101–102, 91 S.Ct. at 1798.

Since the *Griffin* decision dealt directly with § 1985(3) and specifically with a clause of that section containing "equal-protection-of-the-laws" language, I must determine whether or not it is imperative under § 1985(2), which has no such language, to allege a racial or class-based animus. In other words, does the rationale of *Griffin* pertain to the whole of 42 U.S.C. § 1985 or only that portion of § 1985 which contains the equal-protection-of-the-laws language. It is the opinion of this court that 42 U.S.C. § 1985(2) requires as an element of its particular cause of action that racial or class-based animus described in *Griffin*.

The *Griffin* court looked to the plain meaning of the statute and to the legislative history of the act to determine whether class-based animus was a necessary element to a cause of action under § 1985(3). It was noted that § 1985(3) was enacted in 1871 by the Forty-Third Congress in an attempt to enforce the Fourteenth Amendment against the violent and continuing indignities being perpetrated by members of the Ku Klux Klan. Section 1985(3) was originally drafted as a criminal statute which provided:

"That if two or more persons shall . . . conspire together to do any act in violation of the rights, privileges, or immunities of another person, which . . . would, under any law of the United States . . . constitute the crime of either murder, manslaughter, mayhem, robbery, assault and battery, perjury, subornation of perjury, criminal obstruction of legal process or resistance of officers in discharge of official duty, arson, or larceny; and if one or more of the parties to said conspiracy shall do any act to effect the object thereof, all the parties . . . shall be deemed guilty of a felony. . . ." Cong.Globe, 42d Cong., 1st Sess., App. 68–69 (1871).

There was considerable question in the minds of some of the representatives of the Forty-Second Congress with regard to whether or not Congress could constitutionally enact a bill which would allow the federal government to prosecute an individual for a common law crime. See the discussion of Representative Rainey at Cong.Globe, 42d Cong., 1st Sess., 396 (1871). Because of this constitutional concern the bill was amended and the enumeration of the specific offenses was deleted. The amendment was presented by Representative Cook and offered by the bill's sponsor, Representative Shellabarger. It allowed for civil remedies in the event of any violation, and is basically the forerunner of what is now 42 U.S.C. § 1985. From a reading of the legislative history it is apparent that the legislative intent of the Cook-Shellabarger amendment, upon which the Supreme Court in *Griffin* relied, was a reference to the entirety of the act.

The following language was incorporated in the *Griffin* decision as stating the Congressional purpose behind the Cook-Shellabarger amendment:

"The object of the amendment is . . . to confine the authority of this law to the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the rights, the *animus* and effect of which is to strike down the citizen, to the end that he may not enjoy equality of rights as contrasted with his and other citizens' rights, shall be within the scope of the remedies of this section." Cong.Globe, 42d Cong., 1st Sess. at 478 (1871).

Representative Shellabarger, the author of the above quotation, was referring to the entire portion of what is now 42 U.S.C. § 1985. He was not referring to any particular portion of the statute or any particular clause of the amendment. If the *Griffin* court relied upon this language as an indication of Congressional intent to require racial or class-based animus as an element of a cause of action under 42 U.S.C. § 1985(3), it must follow that such an element is necessary under *any* portion of 42 U.S.C. § 1985. While an argument can be made that the

drafters of § 1985 did not intend that it be limited only to racial or class-motivated actions but rather encompassed a statute which would allow a civil remedy for any conspiracy which sought to deny to any citizen any constitutional right, (see the statements of Representative Cook at Cong.Globe, 42d Cong., 1st Sess. at 485 (1871)), the obligation of this court is to follow the dictates of the United States Supreme Court, and its reasoning relies on Congressional language referring to the entirety of 42 U.S.C. § 1985.

Furthermore, in *Means v. Wilson*, 522 F.2d 833 (C.A. 8th Cir. 1975), in an opinion dealing with voting rights under § 1985(3), the court held that "a complaint under 42 U.S.C. § 1985(3) must allege facts to show that intentional or invidious discrimination was the object of the conspiracy." As the voting rights clause under § 1985(3) does not contain any equal-protection language, the obvious implication arises that racial or class-based discrimination is necessary under all of § 1985(3).

Since the language and style of § 1985(3) is similar to § 1985(2), it is not a great step to conclude that if racial or class-based animus is necessary under all of § 1985(3) it must be necessary under all of § 1985(2). The following courts have so held: *Hahn v. Sargent*, 388 F. Supp. 445 (U.S.D.C.Mass.1975); *Kerckhoff v. Kerckhoff*, 369 F.Supp. 1165 (U.S.D.C.Mo.1974); *Johnston v. National Broadcasting Co., Inc.*, 356 F. Supp. 904 (U.S.D.C.E.D.N.Y.1973); *McIntosh v. Garofalo*, 367 F.Supp. 501 (U.S. D.C.W.D.Pa.1973); *Phillips v. Singletary*, 350 F.Supp. 297 (U.S.D.C.So.Car. 1972); *Boulware v. Battaglia*, 327 F. Supp. 368 (U.S.D.C.Del.1971); *Kitchen v. Crawford*, 326 F.Supp. 1255 (U.S.D.C. N.D.Ga.1970), affirmed 442 F.2d 1345 (C.A. 5th Cir. 1971), cert. denied 404 U.S. 956, 92 S.Ct. 318, 30 L.Ed.2d 272 (1971). I therefore conclude that the rationale of the *Griffin* decision must be extended to include 42 U.S.C. § 1985 (2), and because the plaintiff's complaint contains no allegations of racial or class-based animus, it must be dismissed for failing to state a claim upon which relief can be granted.

## III. THE BIVENS DOCTRINE

■ The plaintiff also seeks redress in this matter pursuant to the doctrine promulgated in *Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1970). The *Bivens* case was a decison in line with the Supreme Court's prior determination in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945). I am not persuaded that the jurisdictional doctrines of these cases extends to the matters pleaded before this court. Initially, there is a substantial argument that the *Bivens* doctrine is to be applied in only Fourth Amendment cases. *Moore v. Schlesinger*, 384 F.Supp. 163 (U.S.D.C. Colo.1974), citing *Bivens v. Six Unknown Agents*, 456 F.2d 1339 (C.A. 2nd Cir. 1972) (on remand from 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619); *Moro v. Telemundo Incorporado*, 387 F.Supp. 920, fn. 1 (U.S.D.C.P.R.1974); *Davidson v. Kane*, 337 F.Supp. 922 (U.S.D.C.Va. 1972). Additionally, the *Bivens* decision was premised on the recognition that unless a federal common law right to seek monetary damages exists under 28 U.S.C. § 1331 no remedy would be available to the aggrieved parties. The only effective procedure to inhibit malicious officers from harassing and intimidating citizens was to allow a civil remedy for damages thus incurred. That is not, however, the situation in the suit now before this court. Any violation of the plaintiff's right to a speedy trial was adequately safeguarded by his constitutional defense to such deprivation. Furthermore, a federal judge's contempt power is more than adequate to deter any intentional jury tampering activity on the part of federal officials. Therefore, I find that the *Bivens* doctrine should not be extended to grant jurisdiction in an action for damages from a federal officer's alleged attempts to prevent

an individual from receiving a just and speedy trial.

### IV. CONSIDERATION OF LR75–C–215

As a final consideration in this suit the court directs itself to the plaintiff's petition in the case of *Jones v. Dillahunty, et al*, LR75–C–215 (U.S.D.C.E.D. Ark.). The complaint in that case is substantially identical to the complaint considered herein. Since I have found that no claim upon which relief can be granted has been stated in *Jones v. United States of America and W. H. Dillahunty, et al*, LR75–C–141, a similar finding must be entered in *Jones v. Dillahunty, et al*, LR75–C–215.