Versie KIMBLE, Plaintiff-Appellant,

v.

D. J. McDUFFY, INC. and Industrial Foundation of the South, and all of its subscribers, Defendants-Appellees.

No. 78–1474.

United States Court of Appeals, Fifth Circuit.

June 18, 1981.

Lawrence D. Wiedemann, New Orleans, La., for plaintiff-appellant.

Phelps, Dunbar, Marks, Clavouie & Sims, Harry S. Redmon, Jr., Rutledge C. Clement, Jr., Margaret Ann Brown, New Orleans, La., George J. Petrovich, Jr., Fort Worth, Tex., for defendants-appellees.

Before GODBOLD, Chief Judge, and BROWN, AINSWORTH, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, FRANK M. JOHNSON, Jr., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK and WILLIAMS, Circuit Judges.*

AINSWORTH, Circuit Judge:

The appellant, Versie Kimble, sued D.J. McDuffy, Inc., his former employer, along with several other employers in the oil drilling industry and an association of such employers, in a class action alleging that they conspired to deny him and others employment because they had filed personal injury suits or workmen's compensation claims against employers in the industry. Kimble maintained that 42 U.S.C. § 1985(2),[1] a Reconstruction era statute intended to curtail the activities of the Ku Klux Klan, created a federal cause of action for anyone injured by another as a result of having filed lawsuits or claims for statutory benefits. The district court, with Circuit Judge Alvin B. Rubin sitting by designation, granted the defendants' motion for summary judgment, holding that the facts alleged, if proved, would not support an action under the statute. 445 F.Supp. 269 (E.D.La.1978). On appeal, a panel of this court, with one judge dissenting, reversed. 623 F.2d 1060 (1980). The court then voted to rehear the case en banc, 629 F.2d 1159 (1980), thus vacating the panel opinion. See Fifth Circuit Local Rule 17. We now hold that Kimble's allegations do not come within the scope of Section 1985(2), and therefore affirm the district court.

## I. THE FACTS

D.J. McDuffy, Inc., and the other employer-appellees, are members of appellee Industrial Foundation of the South (IFS), a nonprofit corporation organized to assist members in hiring personnel. According to its brochure, IFS maintains records of workmen's compensation claims and personal injury lawsuits filed in state courts in Texas, Louisiana, New Mexico and Oklahoma and in federal courts throughout the Gulf Coast region. The records include the

---

* Coleman, Circuit Judge, elected not to participate in the consideration or decision of this appeal.

Rubin, Circuit Judge, disqualified himself as he was the district judge in this case.

1. 42 U.S.C. § 1985(2) provides:

(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

. . . .

[T]he party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

worker's name and social security number, the name of the employer involved and its insurance carrier, a description of the injury or disability claimed, the names of any attorneys involved, and information about the disposition or settlement of the claim. The purpose of the organization is to reduce the employers' insurance and workmen's compensation costs by giving the employers information about "insurance and compensation risks."

Kimble was employed by McDuffy as a driller from December 17, 1972 until April 7, 1973.[2] The company claims that it terminated Kimble because he was about to begin a campaign for a local political office.[3] Kimble claims that he was dismissed because McDuffy, which had just joined IFS on March 26, 1973, had learned through the foundation that Kimble had filed a lawsuit against a prior employer and had obtained a sizable judgment.[4] For the purposes of the defendants' motion for summary judgment, we must assume that Kimble's factual allegations are correct. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Tyler v. Vickery*, 517 F.2d 1089, 1094 (5th Cir. 1975).

In its opinion granting the defendants' motion for summary judgment, the district court divided 42 U.S.C. § 1985(2) into four clauses:

A. If two or more persons conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein . . . or

B. to injure such party or witness in his person or property on account of his having so attended or testified, or

C. if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or

D. to injure him or his property for lawfully enforcing . . . the right of any person, or class of persons, to the equal protection of the laws.

445 F.Supp. at 274. The district court held that in order to maintain a cause of action under clauses C and D, a plaintiff must demonstrate that the defendants acted with racial or class-based animus, and that no allegation of such animus was made in this case. 445 F.Supp. at 274–75. The court then held that clause A required a conspiracy to deter a party or witness from attending or testifying in federal court. 445 F.Supp. at 275. Again, no allegation of any attempt to deter or intimidate was made by plaintiffs. Finally, the district court held that the filing of lawsuits or workmen's compensation claims did not constitute attending or testifying in federal court as required by clause B. 445 F.Supp. at 276.

The panel majority, in reversing the district court, agreed that Kimble had stated no valid cause of action under clauses A, C and D of Section 1985(2), but rejected the district court's "narrow reading" of clause B. The panel held that "Congress undoubtedly intended to protect the whole course of justice, not just one segment of the system, the trial process. Thus, for the purposes of Section 1985(2) an individual is deemed to have 'attended' a court of the United States from the moment that the person files a complaint." 623 F.2d at 1068. The district

---

**2.** Kimble applied for a position with a different McDuffy drilling crew on April 8, 1973, and the crew supervisor apparently agreed to rehire him. Upon checking with the office, however the supervisor was told not to rehire Kimble. *See* Record on Appeal, Vol. 1 at 3; Deposition of Kimble at 24–27.

**3.** Deposition of Kimble at 21–22. Kimble did, in fact, run unsuccessfully for political office in July 1973, having qualified to run by filing a

50-signature petition in late April or early May. Deposition of Kimble at 29–31.

**4.** In 1969, Kimble sustained an injury to his right shoulder while he was employed by Noble Drilling Company. He obtained a jury verdict of $35,000. Some time thereafter, he broke a finger while employed by Reading & Bates. He also filed a lawsuit over that injury and received a settlement of $6,500. Record on Appeal, Vol. 1 at 136.

court and a panel of this court thus agreed that Kimble stated no cause of action under clauses A, C and D of Section 1985(2). We fully concur with and adopt their holding as to those clauses, and therefore turn our attention solely to clause B.

## II. THE DERIVATION OF 42 U.S.C. § 1985(2)

The present wording of Section 1985(2) dates back to the 1874 consolidation of the then widely scattered federal laws into the Revised Statutes of the United States. Section 1980 of the Revised Statutes consolidated two acts, the Conspiracy Act of 1861, 12 Stat. 284, and the Ku Klux Klan Act of 1871, 17 Stat. 13. This section, R.S. § 1980, survives intact to this day as 42 U.S.C. § 1985. R.S. § 1980(2) is now, without change, 42 U.S.C. § 1985(2). In discuss-

ing the legislative history of Section 1985(2), the district court apparently believed that the section is derived from the Conspiracy Act, rather than the Ku Klux Klan Act which spawned Section 1985(3). 445 F.Supp. at 271. The court discussed whether decisions interpreting the intent of Congress in passing the Ku Klux Klan Act apply to Section 1985(2). This notion of the derivation of Section 1985(2) is mistaken, however. An examination of the original acts reveals that much of the language of Section 1985(2) comes from the Ku Klux Klan Act and not the Conspiracy Act. In particular, the portion of Section 1985(2) which the district court designated clause B, relating to injuring any party or witness on account of his having attended or testified in federal court, is derived from the Ku Klux Klan Act and not the Conspiracy Act.[5]

---

**5.** Section 2 of the Ku Klux Klan Act, 17 Stat. 13 (1871) provided:

Sec. 2. That if two or more persons within any State or Territory of the United States shall conspire together to overthrow, or to put down, or to destroy by force the government of the United States, or to levy war against the United States, or to oppose by force the authority of the government of the United States, or by force, intimidation, or threat to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof, *or by force, intimidation, or threat to prevent any person from accepting or holding any office or trust or place of confidence under the United States, or from discharging the duties thereof, or by force, intimidation, or threat to induce any officer of the United States to leave any State, district, or place where his duties as such officer might lawfully be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or to injure his person while engaged in the lawful discharge of the duties of his office, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duty, or by force, intimidation, or threat to deter any party or witness in any court of the United States from attending such court, or from testifying in any matter pending in such court fully, freely, and truthfully, or to injure any such party or witness in his person or property on account of his having so attended or testified*, or by force, intimidation, or threat to influence the verdict, presentment, or indictment, of any juror or grand juror in any court of the United

States, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, *or on account of his being or having been such juror*, or shall conspire together, or go in disguise upon the public highway or upon the premises of another for the purpose, either directly or indirectly, of depriving any person or any class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State from giving or securing to all persons within such State the equal protection of the laws, or shall conspire together for the purpose of in any manner impeding, hindering, obstructing, or defeating the due course of justice in any State or Territory, with intent to deny to any citizen of the United States the due and equal protection of the laws, or to injure any person in his person or his property for lawfully enforcing the right of any person or class of persons to the equal protection of the laws, or by force, intimidation, or threat to prevent any citizen of the United States lawfully entitled to vote from giving his support or advocacy in a lawful manner towards or in favor of the election of any lawfully qualified person as an elector of President or Vice-President of the United States, or as a member of the Congress of the United States, or to injure any such citizen in his person or property on account of such support or advocacy, each and every person so offending shall be deemed guilty of a high crime, and, upon conviction thereof in any district or circuit court of the United States or district or supreme court of any Territory

We therefore look directly to the decisions examining the intent of Congress in passing the Ku Klux Klan Act in our effort to interpret clause B, and need not be concerned with whether the same intent supported the Conspiracy Act.[6]

### III. THE REQUIREMENT OF RACIAL OR CLASS-BASED ANIMUS

Section 1985(2) has not generated much litigation. *See Brawer v. Horowitz*, 535 F.2d 830, 837 (3d Cir. 1976) (construing the "perfidious syntax of § 1985(2) with reserve" given the "dearth of authority to light our way"). The majority of decisions arising under Section 1985 have involved Section 1985(3). In this regard, the Supreme Court's landmark opinion in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) is instructive. In *Griffin*, the Court for the first time held that Section 1985(3) reached conspiracies by private parties to deny others the equal protection of the laws. Yet, the Court carefully delineated the cause of action cognizable under Section 1985(3). "The constitutional shoals that would lie in the path of interpreting Section 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment.... [T]here must be some racial, or perhaps, otherwise class-based animus behind the conspiratorial actions." *Griffin, supra*, 403 U.S. at 101–102, 91 S.Ct. at 1798.

In accordance with *Griffin*, this court has limited cases brought under Section 1985(3) to those alleging racial or class-based animus. In *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (*en banc*), we considered a claim by an employee that he was discharged for filing a petition in bankruptcy in contradiction of company rules. Relying on *Griffin*, the *en banc* court held that the plaintiff's allegations did not state a cause of action under Section 1985(3). We stated that

> The Ku Klux Act was passed amid the lawless conditions existing in the South after the Civil War. A major aim of the legislation 'was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state

of the United States having jurisdiction of similar offences, shall be punished by a fine not less than five hundred nor more than five thousand dollars, or by imprisonment, with or without hard labor, as the court may determine, for a period of not less than six months nor more than six years, as the court may determine, or by both such fine and imprisonment as the court shall determine. And if any one or more persons engaged in any such conspiracy shall do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby any person shall be injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the person so injured or deprived of such rights and privileges may have and maintain an action for the recovery of damages occasioned by such injury or deprivation of rights and privileges against any one or more of the persons engaged in such conspiracy, such action to be prosecuted in the proper district or circuit court of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like case in such courts under the provisions of the act of April ninth, eighteen hundred and sixty-six, entitled "An act to protect all persons in the United States in their civil rights, and to furnish the means of their vindication."

(Emphasis added.) The emphasized portion is the source of clause B of Section 1985(2).

**6.** In passing the 1874 act to consolidate and collect all federal statutes and laws, Congress did not intend to change the meaning of the laws even though it made minor changes in language to accommodate the consolidation. "In transferring the language [to the Revised Statutes], it is to be presumed that it was intended to transfer the sense." *Pott v. Arthur*, 104 U.S. 735, 736, 26 L.Ed. 909 (1881). The Revised Statutes were republished, with minor corrections and some additions, in 1878. At that time, Congress made it clear that discrepancies between the original acts and the Revised Statutes were to be resolved by consulting the original acts. 20 Stat. 27 (1878).

agencies.' It is readily apparent from the title of the bill itself, 'An Act to enforce the Provisions of the Fourteenth Amendment ...,' that the key concern of the legislators was to put force behind the Civil War Amendments by providing an avenue for the redress of injuries suffered by the class of newly emancipated slaves. Nowhere have we seen it suggested that Congress was concerned about discrimination being practiced against insolvents.

*McLellan, supra,* 545 F.2d at 932 (footnotes omitted). Ironically, under the panel majority's opinion, the plaintiff in *McLellan* could have avoided dismissal of his lawsuit simply by adding an allegation asserting jurisdiction under Section 1985(2) since the alleged discrimination in that case arose from the filing of a federal bankruptcy action.

To be sure, both *Griffin* and *McLellan* involved cases arising under Section 1985(3) and not Section 1985(2). This fact, however, does not render the cases inapplicable to the present dispute. Indeed, this court has held that *Griffin's* racial or class-based animus requirement is fully applicable to claims brought pursuant to the clauses C and D of Section 1985(2). *Slavin v. Curry,* 574 F.2d 1256, 1262, *modified,* 583 F.2d 779 (5th Cir. 1978). *See Dacey v. Dorsey,* 568 F.2d 275, 277 (2d Cir. 1978); *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). Furthermore, in *Jones v. United States,* 401 F.Supp. 168 (E.D.Ark. 1975), *aff'd,* 536 F.2d 269 (8th Cir. 1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977), the district court held that *Griffin's* requirements also applied to actions brought under the first part of Section 1985(2). The court reasoned that since the congressional history relied on by the Supreme Court in *Griffin* was generally applicable to all of Section 1985, the concern evidenced by the limitation to racial and class-based animus should apply in all cases brought under Section 1985(2) as well as in Section 1985(3). The Eighth Circuit affirmed the holding. 536 F.2d 269 (8th Cir. 1979).

█ The panel rejected the view that actions brought under clause B require racial or class-based animus since that clause does not contain language paralleling Section 1985(3)'s proscription of a conspiracy denying others the equal protection of the laws. It held that since Congress failed to include the equal protection language in clause B of Section 1985(2), it must have intended to protect the entire process of litigation without any racial or class-based animus requirement. The panel majority's reasoning is unpersuasive. *Griffin* evidenced a general concern that actions brought under Section 1985 must be carefully delineated in accordance with the statutory purposes of the Act in order to avoid the unintended creation of a general federal tort law. Section 1985(2) and Section 1985(3) are both derived from Section 2 of the Ku Klux Klan Act.[7] Both modern sec-

---

7. 42 U.S.C. § 1985(3) provides:

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

A careful reading of Section 2 of the Ku Klux Klan Act, set out in note 5, *supra,* indicates

tions are liberally laced with references to "the equal protection of the law," but neither includes a reference to equal protection in each and every clause of the section. The Supreme Court did not arrive at its conclusion that Section 1985(3) required racial or class-based animus through a hypertechnical analysis of the structure and grammar of the section. Instead, the Court examined the overall purpose of Congress in passing the Ku Klux Klan Act, reached the obvious conclusion that Congress did not intend to create a general federal tort law, and held that Congress intended the act to apply only in cases where there was racial or class-based animus. The *Griffin* analysis is not applicable to only a small part of Section 2 of the Ku Klux Klan Act, but to the act in its entirety.[8] If racial or class-based animus is required by Section 1985(3), it is required by Section 1985(2) as well.[9]

■ As the district court and the panel majority agreed, no showing of racial or class-based animus can be made in this case. Clearly, race is not involved. Moreover, the "class" of persons who have filed personal injury lawsuits or workmen's compensation claims is neither a class based on political beliefs or associations (the kind of class envisioned by the framers of the Ku Klux Klan Act) nor a class "having common char-

acteristics of an inherent nature," 445 F.Supp. at 273 (the kind of class afforded special protection under the equal protection clause). The district court and the panel majority acknowledged that the logic of *Griffin* would be lost if the "class" of people allegedly victimized by the defendants' allegedly tortious conduct was considered to be a sufficient class under Section 1985 merely by virtue of their common complaint. *See also Lopez v. Arrowhead Ranches*, 523 F.2d 924, 928 (9th Cir. 1975).

## IV. THE REQUIREMENT OF ATTENDING OR TESTIFYING IN COURT

Clause B of 42 U.S.C. § 1985(2) forbids two or more persons from conspiring to "injure [a] party or witness in his person or property on account of his having . . . attended or testified" in a court of the United States. Plaintiffs did not allege any injury by virtue of having attended or testified in federal court. Instead, plaintiffs alleged that they were injured because they filed personal injury suits or workmen's compensation claims in federal and state courts or before state and federal administrative tribunals. The district court held that such allegations did not state a cause of action under clause B:

that portions of that section are the source of Section 1985(3) as well as Section 1985(2).

**8.** The formal title of the Ku Klux Klan Act itself indicates that the act was not a general federal tort law but instead an act designed to prevent retaliation against those who seek to enforce their rights under the Civil War amendments: "An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States and for Other Purposes." 17 Stat. 13 (1871).

**9.** Congressional action in enacting 18 U.S.C. § 1503, which imposes criminal penalties for obstruction of justice, may be seen as evidence of Congress's belief that 42 U.S.C. § 1985(2) applies only to conspiracies motivated by racial or class-based animus.

The dissent states that we now require the application of an equal protection test in Section 1985(2) actions, and asserts that "[i]t makes little sense . . . to apply an equal protection test to cases that are founded on the denial of other constitutional rights—such as the po-

litical rights protected by section 1985(3) or the due process rights protected by the first part of section 1985(2)." The class-based animus required by the Supreme Court in *Griffin* and now reasserted by this court is not identical with the class-based distinctions required to support an action under the equal protection clause, however. For example, section 1985 was certainly intended to cover conspiracies against Republicans; distinctions based on affiliation with a major political party are not among those traditionally subject to special scrutiny under the Fourteenth Amendment. What *Griffin* stands for, and what we now hold, is that Section 1985 was intended to encompass only those conspiracies motivated by animus against the kinds of classes Congress was trying to protect when it enacted the Ku Klux Klan Act. Certainly "conspiracies" against workers who file personal injury or workmen's compensation claims are not among those Congress was trying to deter in 1871.

[Section 1985(2)] does not create a claim for every conspiracy entered into with intent to deny a citizen access to a court, or to retaliate against a citizen for his utilization of the federal court system. If they are to come within the plain language of the statute, plaintiffs must allege that they were injured on account of having *attended* or *testified in* federal court. This they have not done. . . . At most, the conspiracy charged was aimed at injuring the plaintiffs on account of their having asserted a claim or filed a lawsuit. Congress did not undertake to make that behavior actionable.

445 F.Supp. at 276 (emphasis in original; footnotes omitted). The panel majority rejected the district court's interpretation, finding it overly narrow and holding that "Congress undoubtedly intended to protect the whole course of justice, not just one segment of the system, the trial process." 623 F.2d at 1068.

 The question presented in this case is not whether Congress possesses the *power* to enact legislation forbidding retaliatory conduct against a party for filing suit in federal courts. Rather, the issue is limited to determining whether the existing language of Section 1985(2) achieves that result. It is axiomatic that our analysis of statutory law "must begin with the language of the statute itself." *Touche, Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977). The plain meaning of the word "attend" supports the district court's interpretation. Attend, simply put, means "to be present at." *Webster's Third International Dictionary* 140 (3d ed. 1961).

Also, consideration of the legislative history supports the view that Congress intended the word "attend" to be given its ordinary meaning. Passage of the Ku Klux Klan Act was "motivated by a desire to prevent and punish acts of terror or intimidation that threatened the attempt to create a political environment hospitable to equality." Comment, *A Construction of*

*Section 1985(c) in Light of Its Original Purpose*, 46 U.Chi.L.Rev. 402, 405 (1979). In light of the acts of violence that threatened the sanctity of federal courts, Congress meant Section 1985(2) to protect a party based on his physical presence while attending or testifying in court. In this case, no allegations were made that plaintiffs were injured because they attended or testified in federal court. Given the background of violence and direct intimidation prevalent at the time of the original passage of Section 1985(2), it would be anomalous to find, without any specific support in the legislative history, that Congress intended to create a federal tort remedy for an employer's economic use of public information relating to the filing of federal lawsuits. Section 1985(2) was not designed as a vehicle to remedy such allegedly tortious acts of employers against employees pursuing workmen's compensation or personal injury claims. Rather, it was intended to protect against direct violations of a party or witness's right to attend or testify in federal court. This clear congressional purpose is best served by construing the statutory language in its ordinary meaning so that only direct interference with the federal courts is prohibited in accordance with the general concerns enunciated by *Griffin*.

## V. CONCLUSION

The plaintiff's allegations do not indicate that the defendants acted with the racial or class-based animus required by 42 U.S.C. § 1985(2). In addition, the allegations do not state that the plaintiff was injured on account of having attended or testified in a court of the United States in violation of section 1985(2). We therefore affirm the district court's grant of summary judgment.

AFFIRMED.

REAVLEY, Circuit Judge, with whom GODBOLD, Chief Judge, and RANDALL, Circuit Judge, join, specially concurring:

I concur in the judgment for the reasons given in part IV of the majority opinion. I agree with the dissent that no racial or class-based animus is required by Section 1985(2).

THOMAS A. CLARK, Circuit Judge, concurring specially:

I concur in the en banc decision to affirm the judgment of the district court. It is not necessary to hold, as the majority opinion does, that racial or class-based animus is necessary in order to invoke 42 U.S.C. § 1985(2). This case can be decided under its facts without such an interpretation. Subsection 2 of the Act does not include an equal protection clause as pointed out in the majority opinion, and for this reason one can validly contend that the Supreme Court decision in *Griffin v. Breckinridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), is inapplicable. That case interpreted subsection 3 which does include an equal protection clause.

In the present case the plaintiffs were not refused employment because they attended or testified in federal court. The reason for the non-hire was that plaintiffs had pursued claims against oil companies for injuries related to their employment. The refusal to hire applied whether the claim was in federal court, state court, or a workmen's compensation administrative proceeding. Since there was no nexus between the use of the federal courts and the reason for the refusal to hire, plaintiffs' allegations could not come within 42 U.S.C. § 1985(2). We have unnecessarily given broad scope to an Act that has no relationship to plaintiffs' failure to be employed. Thus, while I agree with the en banc court decision, I do not join in the opinion.

SAM D. JOHNSON, Circuit Judge, with whom VANCE, KRAVITCH, POLITZ, HATCHETT, ANDERSON and TATE, Circuit Judges, join, dissenting in part and concurring in part:

This writer respectfully dissents from that portion of the panel decision that the en banc Court disturbs. This concurrence extends only to that part of the panel opinion that the en banc Court leaves intact.

*Facts*

Plaintiff Versie Kimble and the class he represents are oil industry workers who resorted to state and federal courts or workmen's compensation boards for redress of physical injuries. This, of course, was their legal right. For a fee, the Industrial Foundation of the South furnishes oil industry employers with a laborer's record of claims filed against companies in the oil industry for employment injuries.

The plaintiff here, Versie Kimble, sustained in injury in 1969 while working for a drilling company, filed suit for damages in the federal district court, and obtained a $25,000 jury verdict. In 1972, Kimble began working for the defendant McDuffy. Some months later, McDuffy fired Kimble upon learning of Kimble's prior suit. Kimble sought work from other companies here named as co-defendants, but was unable to obtain employment. It was not until later that Kimble learned that the Industrial Foundation of the South was collecting information concerning personal injury claims and disseminating it.

With the information supplied by the Industrial Foundation, the oil industry employers allegedly discharged current employees or refused to hire prospective employees. Of course, blacklisting has a direct and substantial impact on these working men and women—the very real hardship of being thrown out of work or being unable to find employment for doing nothing more than pursuing their rightful remedies.

Plaintiffs turned to 42 U.S.C.A. § 1985(2), to fight this blacklisting by employers. Accepting plaintiffs' alleged facts as true, the district judge granted summary judgment for defendants. 445 F.Supp. 269 (E.D.La. 1978). A panel of the Fifth Circuit affirmed the district court on all but one of the grounds. 623 F.2d 1060 (5th Cir. 1980). The panel majority held that section 1985(2), clause B, contained a remedy for the blacklisting of federal court plaintiffs. It is this partial reversal that the en banc Court has addressed.

*The Inapplicability of Griffin*

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that there must be some racial or otherwise class-based invidiously

discriminatory motivation for a private conspiracy to be actionable under the equal protection language of section 1985(3). The panel majority held that this equal protection test applied only to equal protection cases—suits invoking the equal protection clause of section 1985(3), as in *Griffin*, or invoking section 1985(2), clauses C or D, which also contain equal protection language. Clauses A and B of section 1985(2), on the other hand, contain no equal protection language. The panel dissent conceded the inapplicability of *Griffin*'s invidiously discriminatory animus requirement to this case and relied on *Griffin* only as authority to narrowly interpret section 1985(2). 623 F.2d at 1072. However, the en banc majority here holds that there must also be an invidiously discriminatory animus for private conspiracies to be actionable under clause B of section 1985(2). A brief review of the source, structure, and purpose of section 1985(2) demonstrates the error of this holding.

Section 1985(2) is derived from section 2 of the Ku Klux Klan Act of 1871. The Klan Act was induced by massive and frequently violent resistance in the Southern states to federal reconstruction and the inability or unwillingness of state governments to deal effectively with the violence. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir.), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Racial equality and protection of civil rights were not the only reasons for enactment of the Klan Act, however. A major concern was restoration of civil authority and preservation of orderly government, including federal court ability to proceed without improper interference. *McCord v. Bailey*, 636

F.2d 606, 615 (D.C.Cir.1980), *cert. filed*, 49 U.S.L.W. 3532 (Jan. 13, 1981).

Accordingly, the first part of section 1985(2), clauses A and B, prohibits conspiracies to interfere with the integrity of the *federal* judicial system. Clause A is in pertinent part concerned with efforts to deter *future* attendance or testimony in federal court, while Clause B is in pertinent part aimed at retaliations for *past* federal court attendance or testimony. The second part, clauses C and D, concerns conspiracies in relation to *state* courts. Clause C deals with efforts to obstruct the *future* course of justice in state courts with the intent to deny equal protections of the laws. Clause D is aimed at retaliations for *past* efforts to enforce the right to equal protection of the laws.

The absence of equal protection language in the first part of section 1985(2),[1] and the presence of equal protection language in section 1985(3) and in the second part of section 1985(2), indicates that Congress knew how to impose the equal protection limitation when it was so intended. *See Stern*, 547 F.2d at 1340. From this it must be concluded that Congress intentionally limited conspiracies in relation to state courts to those conspiracies aimed at depriving persons of equal protection of the laws, but did not so intend with regard to conspiracies to interfere with federal courts. *See McCord*, 636 F.2d at 615. Why is the first part of section 1985(2) so different from section 1985(3) and the second part of section 1985(2)?

Concerns about the constitutional scope of congressional power under the thirteenth and fourteenth amendments moved Con-

---

1. It is important to note that the division of section 1985(2) into four independent clauses does not artificially separate the first part from the equal protection language found only in the second part. Section 2 of the Ku Klux Klan Act, which is reprinted in note 5 of the majority opinion, reveals this. The respective clauses from which clauses A and B of section 1985(2) are derived contain no equal protection language, and the respective clauses in section 2 from which clauses C and D of section 1985(2) are derived *each* requires an equal protection denial purpose or intent for the conspiracy.

Section 1985(3) in pertinent part prohibits private conspiracies to deprive others of equal protection of the laws. The clause in section 2 of the Klan Act of 1871 from which the equal protection clause of section 1985(3) is derived also requires an equal protection denial purpose for that conspiracy. *See also Brawer v. Horowitz*, 535 F.2d 830, 837–39 (3d Cir. 1976), which notes that there was no substantive change in the statutory schema between the 1871 Act and the 1874 consolidation of federal laws into the Revised Statutes. Certainly, the equal protection limitation is a substantive one.

gress to limit federal Klan Act jurisdiction over state torts or crimes. Congress eliminated the original provisions authorizing general federal enforcement of common law crimes and inserted the requirement of a conspiratorial motivation to deny equal protection of the laws. Federal jurisdiction thus encompassed those state law violations, such as obstruction of justice in state courts, that also injured the fourteenth amendment interest in promoting racial equality and protecting civil rights. Otherwise, a conspiracy to commit simple assault and battery might become actionable under federal question jurisdiction. No such limitations are required, however, for protection of the federal interest in the integrity of the federal judicial system and the due process right of participation in the federal court system. *See McCord,* 636 F.2d at 615–17.

The en banc majority ignores this distinction between state and federal jurisdiction. The en banc majority states that the Supreme Court in *Griffin* did not arrive at its conclusion that section 1985(3) required a racial or class-based discriminatory animus through a "hypertechnical analysis of the structure and grammar of the section." Instead, the en banc majority explains, the Supreme Court reached the conclusion that Congress did not intend to create a general federal tort law by examining the overall purpose of Congress in passing the Klan Act. Consequently, the en banc majority asserts, the Supreme Court concluded that Congress intended *the Act* to apply only in cases where there was a racial or class-based animus. On this reasoning, the en banc majority applies the *Griffin* holding to the Act in its entirety; if required by section 1985(3), a racial or class-based animus

is in the en banc majority's view required by section 1985(2) as well.

This reasoning misconstrues *Griffin.* In *Griffin* the plaintiffs invoked section 1985(3)'s equal protection clause. To avoid the unintended creation of a general federal tort law, the Court held that as an element of a cause of action, there must be a racial, or other class-based, invidiously discriminatory conspiratorial animus. 403 U.S. at 102, 91 S.Ct. at 1798. The Supreme Court expressly relied on the equal protection language in section 1985(3) when it pronounced its holding: "The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* (emphasis in original).

Indeed, the Court was construing only the portion of section 1985(3) that prohibits conspiracies to deprive persons of equal protection of the laws. Section 1985(3) also prohibits conspiracies to prevent any voter from giving his support to or advocacy for any candidate for a federal political office. Consistent with the maxim that the conspiratorial motivation must be delineated in accordance with the purposes of the civil rights conspiracy statute, a suit predicated on section 1985(3)'s political rights clause requires a conspiratorial animus to deny others their federal political rights. *See generally Paynes v. Lee,* 377 F.2d 61, 63–64 (5th Cir. 1967). Therefore, a suit predicated on clause B of section 1985(2) requires a conspiratorial motivation to retaliate for the exercise of the due process right to utilize and participate in the federal court system.[2] *Griffin* was expressly an interpre-

---

2. In support of the holding that the *Griffin* discriminatory animus requirement applies to all of the Klan Act, the en banc majority cites the formal title of the Ku Klux Klan Act itself: "An Act to Enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States and for Other Purposes." Without delving into the prudency of reliance on titles to statutes, it is sufficient to note that "Other Purposes" is broad enough to encompass the congressional purpose of protecting

the sanctity of the federal judicial process. *See generally McCord,* 636 F.2d at 617; *Stern,* 547 F.2d at 1341 n.18; *Paynes,* 377 F.2d at 63–64.

The majority points out that the class-based animus requirement is not the same as the test for whether a class-based distinction is actionable under the equal protection clause of the fourteenth amendment. This observation is of course correct since the Supreme Court in *Griffin* referred to a "*racial,* or perhaps other *invidiously* discriminatory animus." 403 U.S. at

tation of section 1985(3)'s equal protection clause and no more.

As judicial support for applying an equal protection test to the first part of section 1985(2), the en banc majority cites Fifth Circuit cases requiring a racial or class-based animus for suits brought under the second part of section 1985(2). Because the second part expressly contains an equal protection animus requirement, there is nothing surprising about these holdings. Such holdings, of course, say nothing about what is required for the first part of section 1985(2). The only case cited by the en banc majority as direct support for its theory is *Jones v. United States*, 401 F.Supp. 168, 172–74 (E.D.Ark.1975), aff'd, 536 F.2d 269, 271 (8th Cir. 1976), cert. denied, 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977). The district court there reasoned, as does the en banc majority here, that the *Griffin* racial or class-based animus requirement applies to the first part of section 1985(2) because the equal protection limitation was allegedly intended to limit the entire Ku Klux Klan Act. The cases cited by the district court in support of its position, however, were all presented with a claim cognizable only under the second part of section 1985(2). Although the Eighth Circuit affirmed the district court, it addressed this question with only three brief sentences. Such a summary affirmance is not compel-

lingly persuasive reasoning by a sister circuit.

In fact, the case authority is contrary to the en banc majority's position here. In a pre-*Griffin* case, this Circuit held that employment retaliation against a labor union member for having appeared and testified before the National Labor Relations Board and a state court could have been within section 1985(2), clause B, except that neither the NLRB nor the state court was a "court of the United States" within the meaning of the statute. *Seeley v. Brotherhood of Painters, Decorators & Paper Hangers of America*, 308 F.2d 52, 58 (5th Cir. 1962). Cases decided after *Griffin* have also rejected the theory that a racial or class-based animus requirement applies to the first part of section 1985(2).

For example, in *Brawer v. Horowitz*, 535 F.2d 830, 840 (3d Cir. 1976), the Third Circuit expressly held that only the second part of section 1985(2), and not the first part, requires a class-based, invidiously discriminatory animus. The federal nexus that the first part of section 1985(2) requires is only a connection between the proscribed activities and a federal court. *Id.* More recently, *McCord v. Bailey*, 636 F.2d 606, 614–17 (D.C.Cir.1980), cert. filed, 49 U.S.L.W. 3532 (Jan. 13, 1981), also held

---

102, 91 S.Ct. at 1798 (emphasis added). The fourteenth amendment's equal protection clause reaches much more than invidious discrimination. Therefore, the scope of actionable discrimination under the equal protection clauses of § 1985(2) and (3) is much narrower than that under the fourteenth amendment's equal protection clause.

The majority, however, concludes that the narrower test for the equal protection clauses of § 1985(2) and (3) is not simply invidious discrimination. Instead, the majority states that all of § 1985 was intended to include only those conspiracies motivated by an animus against the kinds of classes Congress was trying to protect with the enactment of the Klan Act. The majority gives as its example conspiracies against Republicans, noting that distinctions based on affiliation with a major political party are not among those traditionally subject to special scrutiny under the fourteenth amendment. Discrimination on the basis of political association, however, is in fact within

strict scrutiny as constitutionally suspect under the first and fourteenth amendments and under the equal protection clause of the fourteenth amendment unless essential to serve a compelling state interest. *See Riddell v. National Democratic Party*, 508 F.2d 770, 776 (5th Cir. 1975). Discrimination against Republicans would also be actionable under the political rights clause of § 1985(3). Conspiracies against workers who file personal injury or workman's compensation claims are probably not actionable under the equal protection clauses of § 1985(2) and (3). *See Scott v. Moore*, 640 F.2d 708, 718–24 (5th Cir. 1981). That issue is not present in this case, however, if the class-based discriminatory animus requirement does not apply to the first half of § 1985(2). Again, whatever may have been the congressional intent with respect to the equal protection clauses, it is inappropriate to carry that intent over to other areas of the statute that neither contain nor need the limitation of an equal protection test.

that the *Griffin* invidiously discriminatory animus requirement was inapplicable to the first part of section 1985(2) since that part did not contain equal protection language. *McCord* also expressly rejected the notion that such a requirement was necessarily implied in the first part of section 1985(2), to avoid the constitutional shoals of creating a general federal tort law, because there could be no problem of limitations on Congress' power with regard to protection of the federal interest in its judicial process.[3]

The en banc majority opinion reflects a concern that recognition of a cause of action under clause B of section 1985(2) in this case would create a general federal tort remedy, for an employer's economic use of public information relating to the filing of federal lawsuits, in contravention of the constitutional concerns enunciated by *Griffin*. To avoid the constitutional shoals of federalizing state tort law, the en banc majority would limit all section 1985 actions by requiring a racial or class-based conspiratorial animus. It makes little sense, however, to apply an equal protection test to cases that are founded on the denial of other constitutional rights—such as the political rights protected by section 1985(3) or the due process rights protected by the first part of section 1985(2). The constitutional shoals of a general federal tort law are more properly avoided by delineating the conspiratorial animus for a conspiracy under clause B of section 1985(2) to the statutory purpose of protecting the integrity of the federal court system. This can be accomplished by simply requiring a conspiratorial animus to injuriously retaliate against a party or witness for having attended or testified in federal court. Recognizing a cause of action for such a conspiracy carries with it no potential for federalizing state tort law since the due process right to utilize and participate in the federal court system is solely a federal right.

In short, the en banc majority's position violates the language of the statute as well as the holding of *Griffin*. I therefore dissent from the en banc majority's holding that clause B of section 1985(2) requires a racial or class-based invidiously discriminatory conspiratorial animus.

### The Meaning of "Attended"

Because the plaintiffs failed to allege "attended or testified" in their pleading, the district court held that plaintiffs failed to state a cause of action. The panel rejected such a literal approach to construing the plaintiffs' pleading and held that the filing of a federal lawsuit is sufficient participation in the federal judicial system to constitute attendance within the meaning of the words "attended or testified" in clause B of section 1985(2). In affirming the district court, the en banc majority purports to give "attend" its plain dictionary meaning—to be present at. The en banc majority then relies on the existence of violence during the Reconstruction to restrict that presence to physical presence. Although the en banc majority opinion does not expressly limit this physical presence to the trial phase, this meaning of attend can be gleaned from the en banc majority's refusal to include the filing of a federal lawsuit within the meaning of "attend." Such a reading, however, is much too narrow.

The dictionary does not limit the definition of attend to physical presence. Webster's Third New International Dictionary 140 (1976). Inherent in the very concept of legal representation is the notion that a party is present in federal court through his

---

3. *Id.* at 617. *See also Stern*, 547 F.2d at 1341 n.18, which noted that the first part of § 1985(2) is aimed at protecting the sanctity of federal court proceedings and could be sustained without reference to or nexus with the thirteenth and fourteenth amendments.

*Stern* held that the *Griffin* invidiously discriminatory animus requirement is inapplicable to § 1985(1) because of its lack of any equal protection language. In dicta, *Stern* noted that while the *Griffin* discriminatory animus requirement would apply to the second part of § 1985(2) because of the equal protection language present there, the very absence of that language in the first part of § 1985(2) precludes

chosen representative.[4] For example, the legal definition of "appearance" is a coming into court as party to a suit, either in person or by attorney, whether as plaintiff or defendant. Black's Law Dictionary 89 (5th ed. 1979).

It is true that, as the en banc majority opinion notes, "[p]assage of the Ku Klux Klan Act was 'motivated by a desire to prevent and punish acts of terror or intimidation that threatened the attempt to create a political environment hospitable to equality.'"[5] However, physical violence was also available against those who simply filed federal civil rights suits during the Reconstruction, whether filed in person or through an attorney. Even if physical presence were the touchstone, does not a party attend a federal court when he or she personally hand delivers the complaint to the court clerk? Not only can one be physically present at the filing of the lawsuit, but also at, say, a pre-trial conference, a temporary restraining order hearing, and many other pre-trial activities. And when the Klan Act was enacted, the pro se filing of federal suits was more likely. In any event, letting the scope of the statutory protection turn on whether the suit is filed by the party or his attorney seems quite arbitrary.

A functional approach is preferable here. The congressional objective is evident from the face of the statute itself. Its manifest purpose is to protect the sanctity and integrity of the federal judicial process and the ability of all to participate freely therein so that justice will not be obstructed or miscarried. It makes little sense to limit the protection of the first half of section 1985(2) merely to presence at the trial phase of the litigation. Justice does not start on the day of trial. In fact, the filing of the lawsuit is a necessary antecedent for the parties and witnesses to testify. The en banc majority's conception would preclude federal plaintiffs at the outset from having the opportunity to testify. The statute should protect a person who participates in the federal system of justice either personally or through an attorney—from the filing of a complaint to settlement or execution of judgment. A functional approach should be preferred over a literal, restrictive, narrow approach to the interpretation of the meaning of "attend." The functional approach seems truer to the congressional purpose of the statute and avoids the impracticality of deciding at what point in the litigation the statutory protections attach.

In support of narrowly interpreting "attend," the en banc majority relies on *Griffin*. That case, however, did not endorse the imposition of judicial limitations on section 1985 suits. *Griffin* clearly stated that the sweep of section 1985 is as broad as its language. 403 U.S. at 97, 91 S.Ct. at 1795. Furthermore, *Griffin* assured the existence of a section 1985(3) cause of action against private conspiracies. It did not impose a limit on section 1985(3), but merely recognized and gave effect to section 1985(3)'s own self-proclaimed limitations.

Under the functional approach, the only plaintiffs in this case that would come within the protection of clause B of section 1985(2) are those who filed claims in federal court. This includes plaintiff Kimble, but excludes those members of the class who filed claims in state courts or with state and federal workmen's compensation boards. Since blacklisting is just one form of retaliation, and the loss or denial of employment is an injury to property, Kimble and those like him should possess a cause of action under clause B. Of course, whether they could prove up their claims should have been a matter for the merits on remand.

*Conclusion*

Accordingly, this writer stands by the panel majority's opinion. *Griffin* requires

---

application of the *Griffin* requirement to that portion.

4. Indeed, in the eyes of the law the agent is considered as standing in the place of the principal, and an attorney is an agent or substitute for the client. Black's Law Dictionary 59, 117, 807, 1170 (defining "agent," "attorney," "legal representative," "representation of persons," and "representative").

5. 648 F.2d at 348, *quoting* Comment, *A Construction of Section 1985(c) in Light of Its Original Purpose*, 46 U.Chi.L.Rev. 402, 405 (1979).

only an injuriously retaliatory animus, not an invidiously discriminatory animus, for the conspiracy in this case. To include filing suit within the meaning of "attend" is both reasonable and practical. And it poses no danger of federalizing state tort law. I therefore dissent.